**Robert ORTIZ, Appellant,**

v.

**Andrew COLLINS, Tim Welsh, and Jerel S. Twyman, Appellees.**

No. 14–04–01156–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 6, 2006.

Rehearing Overruled Aug. 10, 2006.

Rehearing En Banc Overruled Oct. 19, 2006.

Michael C. Donovan, Houston, for appellant.

John V. Burger, Houston, for Andrews Collins and Tim Welsh.

J. Brad Whitus, Porter & Hedges, LLP, Houston, for Jerel S. Twyman.

Panel consists of Justices YATES and ANDERSON and Senior Justice MIRABAL.*

## SUBSTITUTED MAJORITY OPINION

LESLIE BROCK YATES, Justice.

We withdraw the majority and concurring opinions issued March 9, 2006 and substitute the following opinions in their place.

The trial court granted summary judgment against appellant Robert Ortiz on all of his claims against appellees Andrew Collins, Tim Welsh, and Jerel S. Twyman. In four issues, Ortiz claims the trial court erred in dismissing his claims. In one cross issue, Collins and Welsh challenge this court's appellate jurisdiction.[1] We affirm in part and reverse and remand in part.

### I. BACKGROUND

Collins and Welsh purchased a townhouse at a trustee's foreclosure sale on September 3, 2002. Ortiz, the previous owner, challenged the foreclosure but was unable to prevent it. Collins and Welsh then attempted to gain possession through a forcible detainer. However, Collins and Welsh were still unable to secure possession and hired an attorney, Twyman, who filed another forcible detainer action in November 2002, nearly two months after the original foreclosure sale.

While this second forcible detainer action was pending, the parties entered into negotiations to settle the forcible detainer action and for Ortiz to purchase the property from Collins and Welsh. These negotiations are the subject of the present litigation. Ortiz claims that Collins agreed, on his own and on Welsh's behalf, to sell Ortiz the property for $60,000, which is $10,000 more than they paid at the foreclosure sale, and to have a contract prepared me-

---

* Senior Justice Margaret Garner Mirabal sitting by assignment.

1. Twyman, along with Collins and Welsh, also filed motions to dismiss in this court, alleging lack of subject matter jurisdiction. As explained below, we deny the motions.

morializing the agreement. Ortiz claims that Twyman told Ortiz's brother, who was acting as Ortiz's representative, that he would wait fifteen days to execute on a writ of possession to allow the parties time to finalize the contract and that he would execute on the writ of possession only if Ortiz did not perform under the contract. Relying on these representations, Ortiz did not attend the December 4, 2002 forcible detainer trial to assert his defenses. Collins never prepared a contract, and so Ortiz prepared one that neither Collins nor Welsh signed. Fifteen days after the forcible detainer trial, Twyman executed a writ of possession and gave Ortiz twenty-four hours to vacate the property.

Appellees do not dispute that negotiations occurred but deny there was ever an oral agreement to sell Ortiz the property. Collins and Welsh received Ortiz's proposed contract but refused to sign it, finding its terms unacceptable. They waited fifteen days after the forcible detainer trial and, without an agreement in place to sell Ortiz the property, had Twyman execute a writ of possession.

The day after Ortiz received the notice to vacate, he filed suit against Twyman, Collins, and Welsh. In various amended and supplemental petitions, Ortiz asserted claims for fraud, negligent misrepresentation, promissory estoppel, breach of contract, violation of the Deceptive Trade Practices—Consumer Protection Act ("DTPA"), and conspiracy to defraud and violate the DTPA.

Appellees moved for summary judgment in May 2003. At that time, Ortiz had three live pleadings (Plaintiff's Original Petition, Plaintiff's First Supplemental Petition, and Plaintiff's Second Supplemental Petition). The trial court, in two orders signed on July 22, 2003, granted summary judgment on the claims moved upon. However, between the time appellees filed their summary judgment motions and the trial court ruled on them, Ortiz filed two more supplemental petitions (Plaintiff's Third Supplemental Petition and Plaintiff's Fourth Supplemental Petition) asserting additional claims. The trial court issued an order in September 2003 clarifying that its prior summary judgment orders were interlocutory, and appellees again moved for final summary judgment in October 2003. The trial court ruled on these motions on August 12, 2004, dismissing all claims asserted against appellees. Again, Ortiz had filed another petition (Plaintiff's First Amended Original Petition) after the summary judgment motions were filed but before the trial court ruled. This latest petition included some purportedly new claims against appellees and added a fourth defendant. This fourth defendant was never served, and on October 21, 2004, the trial court granted Ortiz's motion to nonsuit the fourth defendant. The October 21 order also stated, "All claims of all parties in this cause have been disposed and are appealable."

## II. STANDARDS OF REVIEW

Appellees' motions for summary judgment contained both traditional and no-evidence grounds. *See* TEX.R. CIV. P. 166a(c), (i). The standard of review for a traditional motion for summary judgment is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). A defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Under this

traditional standard, this court must take as true all evidence favorable to the non-movant and must make all reasonable inferences in the nonmovant's favor. *See id.* We review a no-evidence summary judgment de novo by construing the record in the light most favorable to the nonmovant and disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted when the respondent brings forth more than a scintilla of probative evidence that raises a genuine issue of material fact. *See* TEX.R. CIV. P. 166a(i); *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 284 (Tex.App.Houston [14th Dist.] 2000, no pet.). When, as here, a trial court's order granting summary judgment does not specify the grounds upon which it relied, we must affirm summary judgment if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

## III. ANALYSIS

### A. Subject Matter Jurisdiction

■ In Collins and Welsh's cross issue and in appellees' motions to dismiss, appellees argue this court has no subject matter jurisdiction because Ortiz did not file a timely notice of appeal. Ortiz filed his notice of appeal on November 19, 2004. Appellees argue this was untimely because it was more than thirty days after August 12, 2004, the date the trial court signed the

second set of orders granting summary judgment on all claims against them. *See* TEX.R.APP. P. 26.1(a). Ortiz asserts that his notice of appeal was timely because it was filed less than thirty days after the October 21 nonsuit order, which was the only final, appealable order. He argues that the August 12 orders were not final because they did not dispose of Twyman's counterclaim for attorneys' fees.[2] *See N.Y. Underwriters Ins. Co. v. Sanchez,* 799 S.W.2d 677, 679 (Tex.1990) (holding that summary judgment order that did not dispose of counterclaim for attorneys' fees under the DTPA was not final and appealable). Appellees respond that Twyman did not file a counterclaim for attorneys' fees but rather a motion for sanctions, which does not affect the finality of the judgment. *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.,* 10 S.W.3d 308, 312 (Tex.2000) (noting that "a judgment does not have to resolve pending sanctions issues to be final").

■ Each of Twyman's various answers includes a "Request for Sanctions" under the DTPA, TEX. BUS. & COM.CODE ANN. § 17.50(c) (Vernon 2002).[3] Section 17.50(c) provides that a defendant in a DTPA action can recover attorneys' fees "[o]n a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment." *Id.* Ortiz argues that such a request for attorneys' fees amounts to a counterclaim. We agree. Claims for attorneys' fees under section 17.50(c) are routinely treated as counter-

---

**2.** Ortiz also asserts that the August 12 orders are not final because they do not dispose of the claims against the later-added fourth defendant, who was nonsuited in the October 21 order. Appellees respond that claims against an unserved defendant do not affect the finality of a judgment. *See M.O. Dental Lab v. Rape,* 139 S.W.3d 671, 674 (Tex.2004). We

need not address this issue because we conclude the August 12 orders were not final for other reasons.

**3.** Twyman also requested sanctions under Rule 13 of the Texas Rules of Civil Procedure and an unspecified provision of the Texas Civil Practices and Remedies Code.

claims. *See, e.g., Klein v. Dooley,* 949 S.W.2d 307, 307–08 (Tex.1997); *Sanchez,* 799 S.W.2d at 678–79; *Vu v. Rosen,* No. 14–02–00809–CV, 2004 WL 612832, at *9 (Tex.App.-Houston [14th Dist.] Mar. 30, 2004, pet. denied) (mem. op.). This is also consistent with the treatment of requests for attorneys' fees in other contexts. *See In re Frost Nat'l Bank,* 103 S.W.3d 647, 650 (Tex.App.-Corpus Christi 2003, no pet.) ("An affirmative claim, stated in an answer, for recovery of attorney's fees for the preparation and prosecution of a defense constitutes a counterclaim."); *ECC Parkway Joint Venture v. Baldwin,* 765 S.W.2d 504, 514 (Tex.App.-Dallas 1989, writ denied) ("A claim for attorney's fees is a claim for affirmative relief."). Appellees emphasize that Twyman did not call his request a counterclaim, but we look to the substance of a claim to determine its nature, not its label. *See Goffney v. Rabson,* 56 S.W.3d 186, 191 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). This court has specifically held that although section 17.50(c) is similar in some respects to Rule 13 of the Texas Rules of Civil Procedure, which authorizes sanctions for filing a groundless pleading, an award of attorneys' fees under section 17.50(c) does not constitute sanctions. *See Mosk v. Thomas,* 183 S.W.3d 691, 695 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

Because we have concluded that Twyman's request for sanctions under section 17.50(c) constitutes a counterclaim, the August 12 orders were not final and appealable because they did not dispose of this claim. *See Sanchez,* 799 S.W.2d at 679

("The summary judgment in this case did not dispose of [defendant]'s counterclaim [for attorneys' fees under section 17.50] and was not final and appealable."); *accord Parks v. DeWitt County Elec. Coop., Inc.,* 112 S.W.3d 157, 162–64 (Tex.App.-Corpus Christi 2003, no pet.). There was no final, appealable order until the October 21 nonsuit order in which the trial court explicitly stated, "All claims of all parties in this cause have been disposed and are appealable." Because Ortiz filed his notice of appeal within thirty days after the October 21 order, his appeal was timely. We deny appellees' motions to dismiss and overrule Collins and Welsh's cross issue.

**B. Fraud, Negligent Misrepresentation, Promissory Estoppel, and Conspiracy to Defraud**

 Ortiz sued appellees for fraud, negligent misrepresentation,[4] and promissory estoppel based on their alleged misrepresentations during the negotiation process when Ortiz was seeking to repurchase the property and forestall execution of a writ of possession. All three claims share the common element of reliance. *See Beal Bank, S.S.B. v. Schleider,* 124 S.W.3d 640, 647, 651, 654 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). This reliance must be reasonable and justified. *See Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 436 (Tex.1997); *Beal Bank,* 124 S.W.3d at 653–54; *Gilmartin v. KVTV–Channel 13,* 985 S.W.2d 553, 558 (Tex.App.-San Antonio 1998, no pet.).

---

4. Appellees assert that Ortiz abandoned some of his claims by failing to include them in his First Amended Original Petition filed on July 12, 2004. However, the amended pleading specifically states, "By this pleading, Plaintiff gives notice that he does not waive and expressly reserves his right to pursue or reassert either in this court and/or on appeal those causes of actions [sic] previously dis-

missed by the Court and not re-pled herein." Based on his clearly expressed intent, Ortiz did not abandon his previous claims by filing his First Amended Original Petition. *See Sheerin v. Exxon Corp.,* 923 S.W.2d 52, 55 (Tex.App.-Houston [1st Dist.] 1995, no writ) (looking to pleader's intent in determining whether new pleading supersedes prior pleadings).

■ Appellees argue that, as a matter of law, reliance on any alleged misrepresentations is unjustified in this case because all representations were made in an adversarial context. We agree. Generally, reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context, such as litigation. *Coastal Bank SSB v. Chase Bank of Tex., N.A.,* 135 S.W.3d 840, 843 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *see also McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 794 (Tex.1999) ("Generally, courts have acknowledged that a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context."); *Chapman Children's Trust v. Porter & Hedges, L.L.P.,* 32 S.W.3d 429, 443 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (stating that reliance on attorney's statement would not have been justifiable "given the adversarial nature of the parties' relationship").[5] "A party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party." *Coastal Bank,* 135 S.W.3d at 843.

Ortiz, who was represented by his brother during these negotiations, does not dispute that the parties' relationship was adversarial initially but contends there is a fact issue as to whether it remained adversarial because the parties had settled their dispute. Even assuming the parties entered into an oral agreement to sell Ortiz the property, the mere existence of that agreement did not align all parties' interests and remove the adversarial nature of the relationship, particularly considering that the written details had yet to be worked out. *See McCamish,* 991 S.W.2d at 794 (holding that, in determining whether a relationship is adversarial, courts should look to the relationship of the parties and the extent to which their interests are aligned). We hold that, as a matter of law, the parties' relationship remained adversarial, and thus any reliance by Ortiz on statements made by appellees during the negotiation process was unjustified and unreasonable.[6] Thus, the trial court did not err in granting summary judgment on Ortiz's fraud, negligent misrepresentation, and promissory estoppel claims.

■ In addition to his fraud claim, Ortiz alleges that appellees conspired to defraud him. Conspiracy is not an independent cause of action but requires an underlying tort. *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996); *Hunt v. Baldwin,* 68 S.W.3d 117, 133 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Because summary

---

**5.** Ortiz asserts that "the case law specifically states that the fact that the fraudulent conduct may have occurred in the context of litigation does not shield one from liability," citing *Querner v. Rindfuss,* 966 S.W.2d 661, 666 (Tex.App.-San Antonio 1988, pet. denied) and *Likover v. Sunflower Terrace II, Ltd.,* 696 S.W.2d 468, 472 (Tex.App.-Houston [1st Dist.] 1985, no writ). However, these cases merely stand for the proposition that an attorney is not automatically immune from suit for fraud by a non-client. *See Querner,* 966 S.W.2d at 666; *Likover,* 696 S.W.2d at 472. They in no way conflict with *McCamish* and other cases concluding that for a third party to hold an attorney liable for a misrepresentation, the plaintiff's reliance on that representation must have been reasonable. *See McCamish,* 991 S.W.2d at 794; *Chapman Children's Trust,* 32 S.W.3d at 443.

**6.** Because we dispose of Ortiz's fraud and negligent misrepresentation claims as a matter of law, we need not address Ortiz's argument regarding whether Collins and Welsh also made a proper no-evidence summary judgment motion as to these claims.

judgment was proper on his underlying fraud claim based on of a lack of justifiable reliance, summary judgment was proper on Ortiz's conspiracy to defraud claims as well.

■ Ortiz claims that summary judgment on his promissory estoppel claim against Collins and Welsh was error because they did not move for summary judgment on that claim. He argues that because he asserted a promissory estoppel claim in his First Amended Original Petition, which was filed after Collins and Welsh's second summary judgment motion, their motion could not have covered this claim. Thus, Ortiz contends, the trial court erred in granting more relief than was requested. *See Wilson v. Korthauer*, 21 S.W.3d 573, 579 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). However, summary judgment may be granted on later-pleaded causes of action if the grounds actually asserted show that the plaintiff could not recover on the later-pleaded cause of action. *Id.; accord Espeche v. Ritzell*, 123 S.W.3d 657, 664 (Tex. App.-Houston [14th Dist.] 2003, pet. denied) ("If a motion for summary judgment is sufficiently broad to encompass later-filed claims, the movant need not amend his motion."). Appellees moved for summary judgment on the ground that any reliance was not justified, and since justifiable reliance is also an element of promissory estoppel, the summary judgment motions were broad enough to cover Ortiz's later-pleaded promissory estoppel claim.

■ Ortiz also argues that appellees did not move for summary judgment on all of his fraud claims. Ortiz asserts that his initial fraud claim was for fraudulent misrepresentation and that he included a new claim for fraudulent conduct in his First Amended Original Petition that was not included in appellees' summary judgment motions. Ortiz fails to explain how these fraud claims differ, given that both are based on allegations that he detrimentally relied on appellees' alleged misrepresentations. To the extent that these fraud claims are somehow separate, both require reasonable reliance.[7] *See Am. Tobacco Co.*, 951 S.W.2d at 436; *Beal Bank*, 124 S.W.3d at 653–54. Thus, appellees' summary judgment motions were sufficiently broad to cover any claim for fraudulent conduct. *See Espeche*, 123 S.W.3d at 664; *Wilson*, 21 S.W.3d at 579.

The trial court did not err in granting summary judgment on Ortiz's claims for fraud, negligent misrepresentation, promissory estoppel, and conspiracy to defraud. We overrule all four of Ortiz's issues to the extent he alleges summary judgment was improper as to these claims.

### C. Breach of Contract

■ Ortiz sued Collins and Welsh[8] for breach of contact, alleging that they breached their oral agreement to resell him the property. Collins and Welsh moved for summary judgment based on the statute of frauds because a contract for the sale of real estate must be in writing. *See* TEX. BUS. & COM.CODE ANN. § 26.01(b)(4) (Vernon Supp.2005). Ortiz countered that

---

**7.** Ortiz asserts that a fraudulent conduct claim does not require reliance. The case he cites, *First State Bank of Miami v. Fatheree*, 847 S.W.2d 391, 395–96 (Tex.App.-Amarillo 1993, writ denied), merely states that "[f]raud consists of many forms and species" and is therefore difficult to define. It does not hold that some forms of fraud may not require

reliance, and we have found no authority that does.

**8.** Though apparently there has been confusion during various parts of the litigation, Ortiz unequivocally states in his brief that he has never asserted a breach of contract claim against Twyman.

promissory estoppel prohibits Collins and Welsh from asserting a statute of frauds defense. On appeal, Ortiz argues that the trial court erred in granting summary judgment on his breach of contract claim because he raised a fact issue as to each element of his promissory estoppel defense.

Promissory estoppel defeats a statute of frauds defense if a plaintiff proves all elements of a cause of action for promissory estoppel in addition to showing that the defendant promised to sign a written document complying with the statute of frauds. *See Ford v. City State Bank of Palacios,* 44 S.W.3d 121, 139 (Tex.App.-Corpus Christi 2001, no pet.); *see also 'Moore' Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 937 (Tex.1972). Ortiz claims that Collins's promise to prepare a contract is sufficient to raise a fact issue on his promissory estoppel defense and thus prevent summary judgment. However, as previously discussed, Ortiz's promissory estoppel claim fails as a matter of law because, given their adversarial relationship, his reliance on any statements from appellees was unjustified. That includes the alleged promise to prepare a contract, which we note Ortiz admittedly did not rely on because he eventually drafted a contract himself. Just as a lack of justifiable reliance defeats Ortiz's promissory estoppel cause of action, it prevents his use of promissory estoppel as a defense to Collins and Welsh's statute of frauds defense. *See Collins v. Allied Pharmacy Mgmt., Inc.,* 871 S.W.2d 929, 936–37 (Tex. App.-Houston [14th Dist.] 1994, no pet.) (applying reasonable reliance requirement to promissory estoppel argument against statute of frauds defense).

We overrule Ortiz's first issue to the extent that he alleges the trial court erred in granting summary judgment on his breach of contract claim against Collins and Welsh.

## D. DTPA and Conspiracy to Violate the DTPA

Ortiz asserted that appellees conspired to and actually did violate the DTPA by engaging in an unconscionable course of conduct during their negotiations. The DTPA grants consumers a cause of action for false, misleading, or deceptive practices or acts. TEX. BUS. & COM.CODE ANN. § 17.50(a)(1) (Vernon 2002); *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex.1996). Among other things, the DTPA prohibits "any unconscionable action or course of action," which it defines as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM.CODE ANN. §§ 17.45(5), 17.50(a)(3) (Vernon 2002).

To recover under the DTPA, the plaintiff must be a consumer. *Vinson & Elkins v. Moran,* 946 S.W.2d 381, 406 (Tex.App.-Houston [14th Dist.] 1997, writ dism'd by agr.). Whether a party is a consumer is a question of law. *Burroughs v. APS Int'l, Ltd.,* 93 S.W.3d 155, 163 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). To be a consumer, the plaintiff must have sought or acquired goods or services by purchase or lease, and those goods or services must form the basis of the complaint. *Id.* Consumer status depends on the plaintiff's relationship to the transaction, not the contractual relationship between the parties. *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983); *Vinson & Elkins,* 946 S.W.2d at 407. Therefore, a plaintiff need not show contractual privity with the opposing party to assert consumer status under the DTPA. *Amstadt,* 919 S.W.2d at 649; *Burroughs,* 93 S.W.3d at 163. In-

stead, the plaintiff must show that the defendant's deceptive conduct occurred in connection with a consumer transaction. *Amstadt,* 919 S.W.2d at 650; *Hou–Tex, Inc. v. Landmark Graphics,* 26 S.W.3d 103, 111 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

 In Twyman's summary judgment motion, he argued, among other things, that Ortiz was not a consumer of his services and that the negotiations did not constitute a consumer transaction under the DTPA. Ortiz does not claim that he was a third-party consumer of Twyman's legal services. Rather, Ortiz argues that because he was negotiating to repurchase his house, the transaction was a consumer transaction. However, the transaction at issue was not the purchase of a house. Ortiz lost his house in a foreclosure sale and was trying to settle the forcible detainer action against him to avoid surrendering possession. Negotiations to settle litigation do not constitute consumer transactions, even when the subject of the litigation involves a good such as a house. *See Kincaid v. Cummins Engine Co.,* No. 05–04–01803–CV, 2005 WL 1744959, at *1 (Tex.App.-Dallas July 26, 2005, no pet.) (mem. op.). Otherwise, every lawsuit concerning a dispute over the purchase or lease of a good or service would itself constitute a consumer transaction. As a matter of law, Ortiz is not a consumer and has not shown that any alleged deceptive conduct by Twyman occurred in connection with a consumer transaction. Thus, the trial court did not err in granting summary judgment on this claim. Because summary judgment was proper on the underlying DTPA claim, summary judgment was also proper as to Ortiz's claim against Twyman for conspiracy to violate the DTPA. *See Tilton,* 925

S.W.2d at 681; *Hunt,* 68 S.W.3d at 133. We overrule Ortiz's fourth issue to the extent that he asserts the trial court erred in granting summary judgment on his DTPA and DTPA conspiracy claims against Twyman.

 Collins and Welsh did not move for summary judgment on the ground that this was not a consumer transaction. Though they labeled their motion as to Ortiz's DTPA claim against them a no-evidence summary judgment motion, the actual grounds for the motion are unclear. On appeal, they argue that there is no evidence they engaged in an unconscionable act or course of conduct because there is no evidence that they ever represented there was a contract. Ortiz argues on appeal that Collins and Welsh's summary judgment motion does not comply with Rule 166a(i) of the Texas Rules of Civil Procedure because it fails to identify which elements of Ortiz's DTPA claim they are challenging.[9] We agree.

 A no-evidence motion for summary judgment "must state the elements as to which there is no evidence." TEX.R. CIV. P. 166a(i). The comments to the rule, which are "intended to inform the construction and application of the rule," state: "The motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." TEX.R. CIV. P. 166a(i) cmt. Thus, a no-evidence summary judgment motion must explicitly assert that there is no evidence of one or more specifically-identified elements of the opponent's claim. *See Community Initiatives, Inc. v. Chase Bank of Tex.,* 153 S.W.3d 270, 279–80 (Tex.App.-El Paso 2004, no pet.); *John-*

9. Ortiz also raised this issue in the trial court in argument contained in his response to Collins and Welsh's motion for summary judgment.

*son v. Felts,* 140 S.W.3d 702, 706 (Tex. App.-Houston [14th Dist.] 2004, pet. denied).

Collins and Welsh's summary judgment motion contains the following paragraph regarding Ortiz's claim that they engaged in an unconscionable act or course of conduct:

Plaintiff further offers no evidence, and none appears in the record, to support a claim under the laundry list of violations identified in the DTPA. Section 17.50(a)(3) of the DTPA provides that a consumer may recover actual damages for "any unconscionable action or course of action" that is the producing cause of damages. Tex. Bus. & Com.Code § 17.50(a)(3). The DTPA defines an "unconscionable action or course of action" as "an act or practice, which ... takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5). Unconscionability under the DTPA is an objective standard for which scienter is irrelevant. *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 677 (Tex.1998). To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of his lack of knowledge and "that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Id.* (quoting *Chastain v. Koonce,* 700 S.W.2d 579, 583 (Tex.1985)).

A violation of the "laundry list" contained in section 17.46(b) of the DTPA is distinct from a claim for unconscionable conduct under section 17.50(a)(3). *See* TEX. BUS. & COM.CODE ANN. §§ 17.46(b), 17.50(a)(3) (Vernon 2002 & Supp.2004–2005); *Ins. Co. of N. Am. v. Morris,* 928 S.W.2d 133, 150 (Tex.App.-Houston [14th Dist.] 1996), *rev'd in part on other grounds,* 981 S.W.2d 667 (Tex.1998); *see also Transp. Ins. Co. v.*

*Faircloth,* 898 S.W.2d 269, 274 (Tex.1995). Thus, the first sentence of this paragraph in Collins and Welsh's motion concerning a laundry list violation has no bearing on the remainder of the paragraph, which concerns Ortiz's unconscionable conduct claim. The remaining sentences merely recite some requirements of an unconscionable conduct claim but do not identify the specific elements for which Collins and Welsh claim no evidence exists. *See Dentler v. Perry,* No. 04–02–00034–CV, 2002 WL 31557302, at *5 (Tex.App.-San Antonio Nov. 20, 2002, no pet.) (not designated for publication) (holding motion that stated, "Plaintiffs have no evidence of any of the elements of the causes of action alleged against these Defendants" to be "legally insufficient as a matter of law"); *Teel v. Am. Title Co. of Houston,* No. 14–00–00375–CV, 2001 WL 1097862, at *2 (Tex.App.-Houston [14th Dist.] Sept. 20, 2001, pet. denied) (not designated for publication) (finding that motion alleging there was "no evidence of ... any element of fraud" to be inadequate because it did not identify any specific element); *Weaver v. Highlands Ins. Co.,* 4 S.W.3d 826, 829 n. 2 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (concluding that no-evidence motion was insufficient because "it does not specifically allege that [plaintiff] lacks evidence, nor does it challenge a particular element of [plaintiff]'s claim"). Because their no-evidence summary judgment motion failed to explicitly assert that there is no evidence of any specifically-identified element of Ortiz's claim, we sustain Ortiz's third issue to the extent that he challenges summary judgment on his DTPA claim against Collins and Welsh.

Collins and Welsh have defended the trial court's grant of summary judgment on Ortiz's DTPA conspiracy claims against them solely on the basis that there is no viable underlying DTPA claim. *See Tilton,* 925 S.W.2d at 681; *Hunt,* 68 S.W.3d

at 133. Because we reverse summary judgment as to Ortiz's DTPA claim against Collins and Welsh, we also reverse the summary judgment as to the DTPA conspiracy claims against them. We sustain Ortiz's third issue to the extent that he challenges the summary judgment on his DTPA conspiracy claims against Collins and Welsh.

### E. Lis Pendens

■ In their first summary judgment motion, Collins and Welsh note that Ortiz filed a notice of lis pendens against the property and complain that it interfered with their ability to market and sell the property. They did not allege that the notice of lis pendens was itself invalid or request that it be vacated. However, in its July 22 order granting this motion, the trial court ordered that the notice of lis pendens "is hereby removed as a cloud on the title of the real property." Ortiz asserts that the trial court erred in granting this relief because it was not requested.

■ To preserve a complaint for appellate review, a party must first present the issue to the trial court. TEX.R.APP. P. 33.1(a). A motion for new trial and a motion to modify a judgment are appropriate methods for preserving error regarding an alleged defect in the final judgment. *Holland v. Hayden*, 901 S.W.2d 763, 765 & n. 5 (Tex.App.-Houston [14th Dist.] 1995, writ denied). The record does not reflect that Ortiz filed such a motion or otherwise brought this alleged error to the attention of the trial court. Thus, he has waived this issue on appeal, and we overrule Ortiz's first issue to the extent that he argues the trial court erred in removing the notice of lis pendens.

## IV. CONCLUSION

We reverse summary judgment as to Ortiz's DTPA and DTPA conspiracy claims against Collins and Welsh and remand for proceedings consistent with this opinion. We affirm the remainder of the trial court's judgment contained in its summary judgment orders of July 22, 2003 and August 12, 2004 and its nonsuit order of October 21, 2004.

MIRABAL, J. concurring.

MARGARET GARNER MIRABAL, Senior Justice, concurring.

### SUBSTITUTED CONCURRING OPINION

I respectfully concur in the result only.

I particularly note the different path I would take to the result reached under Section III B of the majority opinion, dealing with the alleged misrepresentations during the negotiation process.

This case involves a common situation. The parties to the litigation entered into settlement negotiations. The parties did not reduce their negotiated agreement, if any, to writing. Thus, the agreement, if any, was not enforceable and could not reasonably have been relied on by either side. *See Padilla v. LaFrance*, 907 S.W.2d 454, 459–61 (Tex.1995), and its progeny.[1]

---

1. I respectfully disagree with the majority opinion's reliance on the three cases: *Coastal Bank*; *McCamish, Martin, Brown & Loeffler*; and *Chapman Children's Trust*. All three cases involved evaluative types of misrepresentations, such as: statement that the bank's history was "very satisfactory" (*Coastal Bank*, 135 S.W.3d at 842–43); an opinion that the

Trusts were guilty of tortiously interfering with the settlement agreement (*Chapman*, 32 S.W.3d at 443); statement about past Board actions in the process of giving guidance (*McCamish*, 991 S.W.2d at 789–90). None of these cases dealt with an alleged agreement by a party or attorney to affirmatively act, or refrain from acting, in the future, as in the present case. If the alleged agreements in the present case had been reduced to writing, it appears the majority would still hold that reliance on the agreements would not have been justifiable because the representations of agreement took place in an adversarial context (as the representations in *McCamish* were in writing, 991 S.W.2d at 789). To the contrary, I conclude these three cases are distinguishable from, and inapplicable to, the present case.