Affirmed in Part, and Reversed and Remanded in Part, and Opinion filed June
3, 2010.

 

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00449-CV

___________________

 

Michael Valls, Appellant

 

v.

 

Johanson & Fairless, L.L.P., et al.,
Appellees



 



 

On
Appeal from the 400th District Court

Fort Bend County,
Texas



Trial Court Cause No. 06-CV-150644 A

 



 

 

OPINION

Appellant,
Michael Valls, agreed to settle a business dispute with his former employer and
business partner – appellees Prime Directional Systems, L.L.C. (“Prime”) and
Ernie Parker, respectively – by accepting a contingent financial interest in
their ongoing lawsuit against an unrelated entity.  When that lawsuit settled,
however, Valls was left out of the distribution of settlement proceeds.  He
sued Prime and Parker for breach of the settlement agreement and also sued his
opponents’ attorneys, who had drafted the agreement, for professional
negligence, breach of fiduciary duty, conspiracy to defraud, and negligent
misrepresentation.

The trial court granted
summary judgment on all of appellant’s claims, prompting this appeal.  We hold
Prime and Parker did not demonstrate their entitlement to judgment as a matter of
law; therefore, we reverse the summary judgment as to them and remand Valls’s
breach-of-contract claims for further proceedings.  However, because Valls has
not raised a valid cause of action permitting him to sue opposing counsel, we
affirm that portion of the summary judgment.

I.

Background

Appellant Valls was a
founding member of Prime Directional Systems, L.L.C., and also served as its
president until his employment was terminated for reasons that are unclear.  He
sought benefits under a severance package that allegedly was to pay him three
years’ salary, and also asked Prime to repay a promissory note allegedly owed
to him.  

In response, Prime
proposed a different agreement to settle his claims.  At that time, Prime and
Parker were embroiled in other litigation (hereafter, the “Tensor lawsuit”)
against an unrelated entity, Tensor/Allied Signal, from whom they were seeking
damages for fraud and misrepresentation.  To compromise his employment claims, Valls
accepted a contingent interest offered by Prime and Parker in any recovery
obtained in their ongoing suit against Tensor.

The parties’ agreement
(hereafter, the “Settlement Agreement”) consists of a three-page letter written
by appellee Mike Johanson – one of the attorneys representing Prime and Parker
– and addressed to Valls’s attorney, Steve Bryant.  The letter recites a
somewhat complicated arrangement for the division of any money recovered in the
Tensor lawsuit.  In summary, Valls was to receive the first $500,000 – and an
additional percentage of any amount in excess of $500,000 – of any “net
recovery.”  However, the parties dispute the manner in which “net recovery”
should be calculated.  Their disagreement stems from the fact that the
Settlement Agreement proposes one formula for this calculation, but a
contingent fee agreement (hereafter, the “CFA”) between Prime, Parker, and
their attorneys recites a different method for determining “net recovery.”  The
difference between these two formulas is not inconsequential.

Specifically, two
paragraphs at the end of the Settlement Agreement describe the calculation of
“net recovery,” using hypothetical numbers representing possible verdicts and
lawsuit expenses.  In those sections, “net recovery” is said to be calculated
by deducting lawsuit expenses first and attorney’s fees second. 
The remainder would then be split by Valls, Prime, and Parker according to the
earlier terms of the Settlement Agreement.  However, the CFA reverses the order
of those deductions.  Under that contract, “net recovery” was to be determined
by withdrawing attorney’s fees first and lawsuit expenses second.[1]  

Under either document,
attorney’s fees were listed at forty percent.  However, the order in which
attorney’s fees and lawsuit expenses were to be deducted is of some
significance.  Under the Settlement Agreement, the attorneys would effectively
share the burden of forty percent of lawsuit expenses because those costs were
to be paid before attorney’s fees; under the CFA, however, the attorneys would
not participate in paying any expenses.  In this case, because expenses
ultimately exceeded $500,000, the seemingly minor difference in wording between
these two contracts actually resulted in a dramatically different outcome for
Valls.

The Tensor lawsuit
settled for $1,600,000 and, according to appellees, lawsuit expenses totaled
$571,037.44.  Given these figures, Valls’s recovery, if calculated under the
Settlement Agreement, would be $511,737.75.[2] 
However, he actually received no money because the lawsuit proceeds were
instead distributed according to the formula contained in the CFA.[3]  After Valls
questioned the manner in which the settlement proceeds were disbursed, the
appellees – Prime, Parker, and their attorneys[4]
– filed a declaratory judgment action in district court.  Valls counterclaimed
against Prime and Parker for breach of contract, and also sued the Lawyers for
negligence, conspiracy to defraud, breach of fiduciary duty, and negligent
misrepresentation.

The trial court granted
summary judgment on Valls’s counterclaims, which were then severed into a
separate lawsuit.  After that judgment became final, Valls timely filed this
appeal.  Raising two issues, Valls challenges summary judgment on his contract
claims against Prime and Parker and his tort claims against the Lawyers.

 

 

II.

Standard of
Review

We review the trial
court’s summary-judgment order under well-established standards.  See
Seidner v. Citibank (S.D.) N.A., 201 S.W.3d 332, 334 (Tex. App.—Houston
[14th Dist.] 2006, pet. denied).  To prevail by summary judgment, a movant must
prove its right to judgment as a matter of law.  See Tex. R. Civ. P. 166a(c);
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  If the
evidence demonstrates the movant’s entitlement to summary judgment, the burden
then passes to the non-movant to raise a genuine issue of material fact to
defeat the motion.  See Va. Power Energy Mktg., Inc. v. Apache Corp.,
297 S.W.3d 397, 402 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

In this case, Valls did
not respond to the appellees’ motion for summary judgment; as a result, he may
challenge only the legal sufficiency of the summary-judgment grounds expressly
raised in the motion:[5]

The trial court may not grant a summary judgment by default
for lack of an answer or response to the motion by the non-movant when the
movant’s summary judgment proof is legally insufficient.  The movant still must
establish his entitlement to a summary judgment on the issues expressly
presented to the trial court by conclusively proving all essential elements of
his cause of action or defense as a matter of law.  Summary judgments must stand
on their own merits, and the non-movant’s failure to answer or respond cannot
supply by default the summary judgment proof necessary to establish the
movant’s right.

While it would be prudent and
helpful to the trial court for the non-movant always to file an answer or
response, the non-movant needs no answer or response to the motion to contend
on appeal that the grounds expressly presented to the trial court by the
movant’s motion are insufficient [a]s a matter of law to support summary
judgment.

 

City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979) (footnote
omitted) (citations omitted); see Tello v. Bank One, N.A., 218 S.W.3d
109, 118–19 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

On appeal, we are to
review the summary-judgment motion and evidence de novo.  See Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Thus, we must
consider the evidence in the light most favorable to the non-movant – here,
Valls – while indulging reasonable inferences and resolving doubts in this
favor.  See City of Keller v. Wilson, 168 S.W.3d 802, 824 (Tex. 2005); Va.
Power, 297 S.W.3d at 402.

III.

Analysis

In his first issue,
Valls challenges the summary judgment disposing of his breach-of-contract
action against Prime and Parker.  His second issue is devoted to the summary
judgment on his tort claims against the Lawyers.  We will address each category
of claims separately.

 

 

A.        Breach-of-Contract
Claims against Prime and Parker

In their motion for
summary judgment, Prime and Parker argued they did not breach the Settlement
Agreement, as a matter of law, because they complied with its material
terms.  Stated differently, they contend some portions of the Settlement
Agreement are enforceable but others are not.  In their view, Valls cannot
enforce the following provisions that describe, using hypothetical numbers, the
calculation of Valls’s share of any recovery:

By way of example, assuming a $75,000,000 verdict and/or
settlement in favor of Prime and Ernie Parker, assuming $500,000 in
out-of-pocket expenses (which come “off the top”),[6] the net to the
clients would be 60% of $74,500,000, or $44,700,000.  The first $500,000 of
that $44,700,000 would go directly to Mr. Valls.  Mr. Valls would then receive
ten percent (10%) of the next $5,000,000 in “net” recovery to the client
($500,000).  Mr. Valls would then receive seventeen percent (17%) of the
remaining “net” recovery to the client ($39,200,000) for a total of
$6,664,000.  Mr. Valls’[s] total recovery under that scenario would be
$7,664,000.

As we discussed, we feel very
strongly about this lawsuit and expect a substantial recovery either by way of
settlement or judgment; however, for purposes of illustration only, if we were
to assume a $20,000,000 verdict and/or settlement in favor of Prime and Ernie
Parker, assuming $500,000 in out-of-pocket expenses, the “net” to the clients
would be sixty percent (60%) of $19,500,000 or $11,700,000.  Under this
scenario, Mr. Valls would receive the first $500,000 of the money due to the
clients, and then would receive an addition [sic] ten percent (10%) of the next
$5,000,000 ($500,000) along with seventeen percent (17%) of the final
$6,200,000 ($1,054,000) for a total of $2,054,000.

 

Prime and Parker concede
they did not comply with these distribution provisions.  However, they contend
these paragraphs should be disregarded as unenforceable because they were
introduced only as an “example” or “illustration.”[7]  In response,
Valls asks us to interpret the Settlement Agreement to give effect to all of
its provisions, including the paragraphs quoted above.  We will consider this
dispute under general contract-interpretation principles.

Our primary goal in
interpreting a contract, of course, is to ascertain and give effect to the
parties’ intent as expressed in the contract.  Don’s Bldg. Supply, Inc. v.
OneBeacon Ins. Co., 267 S.W.3d 20, 30 (Tex. 2008); Ayres Welding Co. v.
Conoco, Inc., 243 S.W.3d 177, 180 (Tex. App.—Houston [14th Dist.] 2007,
pet. denied).  We are to presume the parties intended for every clause to have
some effect.  See Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118,
121 (Tex. 1996).  Therefore, we must examine the entire contract with the goal
of harmonizing and giving effect to all provisions so that none is rendered
meaningless.  Seagull Energy E & P, Inc. v. Eland Energy, Inc., 207
S.W.3d 342, 345 (Tex. 2006); Ayres Welding, 243 S.W.3d at 181.  

In their brief, Prime
and Parker cite no authority, nor have we found any, suggesting we can
disregard, as a meaningless “example,” the portion of the Settlement Agreement
that contains the formula for calculating Valls’s share of any recovery.  In
their motion for summary judgment, Prime and Parker referred to Enterprise
Leasing Co. of Houston v. Barrios, 156 S.W.3d 547 (Tex. 2004), Ogden v.
Dickinson State Bank, 662 S.W.2d 330 (Tex. 1983), and Lavaca Bay
Autoworld, L.L.C. v. Marshall Pontiac Buick Oldsmobile, 103 S.W.3d 650
(Tex. App.—Corpus Christi 2003, no pet.), for the proposition that courts may
disregard some contract provisions in favor of other conflicting clauses that
contribute more meaningfully to the parties’ agreement.  See Lavaca Bay,
103 S.W.3d at 659.

However, those authorities
are not instructive here because they address a different situation in which
the contract contains two clauses that are in apparent conflict, a scenario not
present here.  See Enterprise Leasing, 156 S.W.3d at 549 (instructing
courts, in the event of a conflict, to give preference to operative
clauses rather than the title of a contract provision); Ogden, 662
S.W.2d at 332 (“[T]he Court will not strike down any portion of the contract unless
there is an irreconcilable conflict.”) (emphasis added); Lavaca Bay,
103 S.W.3d at 659 (“[W]hen differences exist between terms in the
same instrument, those that contribute most essentially to the agreement
are entitled to greater consideration.”) (emphasis added).  Here the Settlement
Agreement contains no such internal conflict because it recites only one method
for calculating “net recovery.”[8] 
Therefore, because the cases cited by Prime and Parker in their
summary-judgment motion pertain only to inconsistent terms within the same
agreement, they do not apply here.

Instead, the
summary-judgment evidence reveals a conflict only between the inconsistent
formulas recited in two separate documents:  the Settlement Agreement, to which
Valls was a party, and the CFA, to which he was not.  However, we may not
consider the CFA as a part of the agreement between Prime, Parker, and Valls
because that document is neither signed by Valls nor referred-to in the
Settlement Agreement.[9] 
See Owen v. Hendricks, 433 S.W.2d 164, 167 (Tex. 1968); Ikon Office
Solutions, Inc. v. Eifert, 2 S.W.3d 688, 693 (Tex. App.—Houston [14th
Dist.] 1999, no pet.); Cavazos v. Cavazos, 941 S.W.2d 211, 214 (Tex.
App.—Corpus Christi 1996, writ denied).  To the contrary, the Settlement
Agreement indicates Valls’s recovery would be as provided by “the terms and
conditions of this Agreement.”[10] 


Therefore, properly
applying contract-interpretation principles, we must construe the Settlement
Agreement to give effect to all provisions so that none are rendered
meaningless, including the paragraphs describing the calculation of “net
recovery.”  See Seagull Energy, 207 S.W.3d at 345; Heritage Res.,
939 S.W.2d at 121; Ayres Welding, 243 S.W.3d at 181.  Because Prime and
Parker acknowledge they did not comply with those provisions, they were not entitled
to summary judgment from Valls’s breach-of-contract claims.  See Tex. R.
Civ. P. 166a(c); Nixon, 690 S.W.2d at 548.  Accordingly, we sustain
Valls’s first issue and turn to his tort claims against the Lawyers.

B.        Tort
Claims against Opposing Counsel

Valls also filed suit
against the attorneys for Prime and Parker, accusing them of wrongdoing in
connection with the preparation of the Settlement Agreement and distribution of
settlement proceeds.  Some of his chosen legal theories – professional
negligence and breach of fiduciary duty – require proof of an attorney-client
relationship between Valls and opposing counsel, an allegation the Lawyers
deny.  They successfully moved for summary judgment on these claims, arguing
they did not agree to represent Valls and therefore owed no legal duty to him. 
See, e.g., Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 405
(Tex. App.—Houston [1st Dist.] 2005, pet. denied) (“An attorney in Texas . . .
is not liable to non-client third parties for legal malpractice.”).  Valls
appeals from that ruling.[11]

Appellant also insists
that, even in the absence of an attorney-client relationship, he may still sue
opposing counsel for their allegedly negligent misrepresentations in the
Settlement Agreement.  In response, the Lawyers argue Valls could not justifiably
rely, as a matter of law, on statements made by opposing counsel in an
adversarial setting.  The trial court agreed with the Lawyers and granted
summary judgment as to negligent misrepresentation.

1.         Professional Negligence and Breach of
Fiduciary Duty

We begin with
appellant’s accusations of professional negligence and breach of fiduciary
duty.  Both legal theories require proof that the defendant in fact owed some
legal duty to the plaintiff arising from the relationship between the parties. 
See Lundy v. Masson, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.]
2008, pet. denied) (noting the requisite elements of a breach-of-fiduciary-duty
claim include a fiduciary relationship between the plaintiff and defendant); Rangel
v. Lapin, 177 S.W.3d 17, 22 (Tex. App.—Houston [1st Dist.] 2005, pet.
denied) (“A legal malpractice action is based upon negligence and requires
proof of . . . a legal duty[.]”).

Valls seeks to overcome
that evidentiary hurdle by claiming he became the Lawyers’ de facto client
when he signed the Settlement Agreement.  That is, because his interests became
aligned with Prime’s and Parker’s once he acquired a financial stake in their
lawsuit, he concludes the Lawyers owed professional duties to him, too.  He
cites no authority, nor have we found any, suggesting an attorney owes
professional duties to all those whose financial interests may be aligned with
his client’s.  Cf. Am. Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842,
844 n.6 (Tex. 1994) (holding a liability insurer, despite its financial
interest in the litigation, was not the client of the attorney hired to
represent its insured).  Therefore, we analyze his claim under the common law
relevant to the formation of an attorney-client relationship.

In a general sense, an
attorney-client relationship arises from a lawyer’s agreement to render
professional services to a client.  Greene’s Pressure Treating &
Rentals, Inc. v. Fulbright & Jaworski, L.L.P., 178 S.W.3d 40, 43 (Tex.
App.—Houston [1st Dist.] 2005, no pet.).  The parties should clearly and
expressly agree to the nature of the work to be done and the compensation to be
paid.  See Hill v. Bartlette, 181 S.W.3d 541, 547 (Tex. App.—Texarkana
2005, no pet.).  Occasionally, that agreement may be implied from the parties’
conduct.  See Perez v. Kirk & Carrigan, 822 S.W.2d 261, 265 (Tex.
App.—Corpus Christi 1991, writ denied).  For example, an attorney-client
relationship may arise by implication if the lawyer knows a person reasonably
expects him to provide legal services but does nothing to correct that
misapprehension.  See Span Enters. v. Wood, 274 S.W.3d 854, 857–58 (Tex.
App.—Houston [1st Dist.] 2008, no pet.).

Whether the agreement is
express or implied, however, there still must be some manifestation that both
parties intended to create an attorney-client relationship; therefore, one
party’s mistaken belief is not sufficient, by itself.  See Tanox, Inc. v.
Akin, Gump, Strauss, Hauer & Feld, L.L.P., 105 S.W.3d 244, 254 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied); Roberts v. Healey, 991
S.W.2d 873, 880 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  Accordingly,
we examine the parties’ statements and actions under an objective standard
rather than their subjective beliefs.  See Roberts, 991 S.W.2d at 880.

Because Valls contends
the Settlement Agreement created an attorney-client relationship, we begin with
that document.  We note the Agreement repeatedly identifies Prime and Parker,
but not Valls, as the “client” or “clients” of the Lawyers.  In addition, the Agreement
does not suggest any additional work the Lawyers might perform apart from their
already existing plans to prosecute the claims on behalf of Prime and Parker. 
The contract does not obligate Valls to compensate the Lawyers for these
services.  See Hill, 181 S.W.3d at 547–48 (concluding no fact issue
existed where putative client was not required to pay attorney’s legal fees).  The
Agreement also contemplated that any contact or communication between the
Lawyers and Valls would come only through the latter’s attorneys.[12]

Further, the entire
appellate record contains no request by Valls, or agreement by the Lawyers, to
represent him at any time.  Cf. Perez, 822 S.W.2d at 265 (holding fact
issue existed where attorneys allegedly stated they were Perez’s lawyers and
“were going to help him”).  To the contrary, the record consistently shows
that, both before and after the execution of the Settlement Agreement, Valls
continued to be represented by his own attorneys.

We hold Valls has not
raised a genuine issue of material fact as to his professional-negligence and
breach-of-fiduciary-duty claims against opposing counsel.  Therefore, we
overrule that part of appellant’s second issue.

 

 

2.         Negligent Misrepresentation

Notwithstanding the
foregoing, a non-client still may sue an attorney for negligent
misrepresentation:

One who, in the course of his business, profession, or
employment, or in any transaction in which he has a pecuniary interest,
supplies false information for the guidance of others in their business
transactions, is subject to liability for pecuniary loss caused to them by
their justifiable reliance upon the information, if he fails to exercise
reasonable care or competence in obtaining or communicating the information.

 

McCamish,
Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 791
(Tex. 1999) (emphasis added) (quoting Restatement (Second) of Torts § 552(1)
(1977)).

Here, Valls accused the
Lawyers of negligently misrepresenting, in the Settlement Agreement, the method
by which they planned to deduct attorney’s fees and expenses from any recovery
in the Tensor lawsuit.  In response, the Lawyers do not quarrel with the
allegation that the Settlement Agreement contains a misrepresentation.  However,
they argue Valls’s reliance on their misrepresentation, if any, was not
justified because the statements were offered in an adversarial setting.

Valls acknowledges the
well-settled rule that a party may not justifiably rely on an opposing
attorney’s statements made in an adversarial setting, such as litigation.  See
McCamish, 991 S.W.2d at 794; Ortiz v. Collins, 203 S.W.3d 414, 422
(Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding party to an arms-length
transaction must protect his own interests and cannot excuse his failure to do
so on “mere confidence in the honesty and integrity of the other party”)
(citation omitted).  However, he argues (1) the question of justifiable
reliance is a question of fact and therefore inappropriate for summary
judgment, and (2) the record does not reflect the nature of the relationship
between the parties when the Settlement Agreement was prepared.  On the record
presented, we must reject both arguments.

Valls cites McMahan
v. Greenwood for his broad proposition that “justification of reliance is a
question of fact” to be decided by a jury.  108 S.W.3d 467 (Tex. App.—Houston
[14th Dist.] 2003, pet. denied).  McMahan, however, does not go that
far.  Instead, this Court decided only that a fact issue existed as to one
party’s reliance on statements made before the parties’ relationship
became adversarial.  “Here, while statements made during settlement
negotiations were likely made in an adversarial context, statements made
[previously] during the formation and operation of [the company] most likely
were not.”  Id. at 497 (emphasis added).  

Moreover, this Court has
repeatedly decided issues of justifiable reliance as a matter of law.  See
Ortiz, 203 S.W.3d at 422 (“We hold that, as a matter of law, the parties’
relationship remained adversarial, and thus any reliance by Ortiz on statements
made by appellees during the negotiation process was unjustified and
unreasonable.”) (emphasis added); Chapman Children’s Trust v. Porter &
Hedges, L.L.P., 32 S.W.3d 429, 443 (Tex. App.—Houston [14th Dist.] 2000,
pet. denied) (affirming summary judgment because party was not justified in
relying on opposing counsel’s representations “given the adversarial nature of
the parties’ relationship”).  Therefore, we disagree with the suggestion that a
fact-finder must always decide whether a party’s reliance on a
misrepresentation was justified.

As to appellant’s second
argument, the evidence does not suggest anything other than an adversarial
relationship between the parties at the time the alleged misrepresentation took
place.  When the Settlement Agreement was prepared, the parties were in the
midst of negotiations to prevent the onset of litigation between them.  Courts
have repeatedly held a party may not justifiably rely on statements made by
opposing counsel during settlement negotiations.  See Ortiz, 203 S.W.3d
at 422; McMahan, 108 S.W.3d at 497; see also Garcia, 876 S.W.2d
at 849 (“We recognize that settlement negotiations are adversarial and that
reasonable negotiation often involves hard bargaining by both sides.”).  Here,
the negotiation process involved an arms-length transaction in which both sides
were represented and advised by their own counsel.  See Ortiz, 203
S.W.3d at 422.  

Admittedly, the parties
later set aside their grievances, at least temporarily until the distribution
of settlement proceeds prompted a renewal of hostilities.  However, at the time
the Settlement Agreement was drafted, the parties’ relationship was
adversarial.  Therefore, appellant was not justified in relying on statements
uttered by opposing counsel during that time period.  Accordingly, we overrule
appellant’s second issue and affirm the summary judgment as to the Lawyers.

IV.

Conclusion

Appellees openly
acknowledge the Settlement Agreement “inadvertently reverse[s]” the order in
which attorney’s fees and lawsuit expenses were to be deducted from the total
recovery.  Yet, that was the deal apparently struck by the parties and, on this
record, Prime and Parker have not proven as a matter of law that they could
freely disregard the agreed-upon formula in favor of another that Valls never
saw and did not ratify.  Accordingly, we must reverse summary judgment as to
them and remand Valls’s breach-of-contract claims for further proceedings.

However, even assuming
the admitted mistake could be deemed professional negligence, as appellant
alleges, Valls simply is not among those entitled to sue the Lawyers for negligence
because he was not their client.  See Alpert, 178 S.W.3d at 405.  That
rule is motivated by important public policy concerns:

An attorney has a duty to
zealously represent his clients within the bounds of the law. . . .  If an
attorney could be held liable to an opposing party for statements made or
actions taken in the course of representing his client, he would be forced
constantly to balance his own potential exposure against his client’s best
interest.  Such a conflict hampers the resolution of disputes through the court
system and the attainment of justice.

 

Id.
(citing Bradt v. West, 892 S.W.2d 56, 71–72 (Tex. App.—Houston [1st
Dist.] 1994, writ denied)); see also Am. Centennial Ins. Co. v. Canal Ins.
Co., 843 S.W.2d 480, 484 (Tex. 1992) (“Texas courts have been
understandably reluctant to permit a malpractice action by a nonclient because
of the potential interference with the duties an attorney owes to the
client.”).

Accordingly, only a
client may sue his lawyer for professional negligence.  See Alpert, 178
S.W.3d at 405.  For that reason, and because the record does not support a
negligent-misrepresentation case against his opponents’ counsel, we affirm the
trial court’s judgment as to appellant’s tort claims against appellees Mike
Johanson, Joe House, Mark Wham, Johanson & Fairless, L.L.P., and House
& Wham, L.L.P.

 

                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

 

Panel consists of Justices Yates,
Boyce, and Sullivan.

 









[1] In their motion for
summary judgment, Prime and Parker admitted, “[I]n the settlement agreement . .
. the order of the deduction of attorney’s fees and expenses from the total
recovery was inadvertently reversed” from the method described in the CFA.





[2] This number may be
derived by deducting lawsuit expenses of $571,037.44 from the total $1,600,000
settlement, producing a remainder of $1,028,962.56.  After removing forty
percent of that amount for attorney’s fees, the remaining sixty-percent share –
$617,377.54 – was left to be divided among Valls, Prime, and Parker.  According
to the Settlement Agreement, Valls would receive the first $500,000 of this
“net recovery,” as well as ten percent of the remaining $117,377.54, or
$11,737.75.  Thus, his total recovery under the Settlement Agreement would be
$511,737.75.





[3] Forty percent of the
total was withdrawn for attorney’s fees, leaving $960,000.  After lawsuit
expenses of $571,037.44 were deducted, the remaining “net recovery” to be
shared between Valls, Prime, and Parker totaled only $388,962.56.  However, the
parties’ agreement recited that, if Valls were to receive less than $500,000,
the Settlement Agreement would be treated as null and void so that Valls would
receive no portion of the Tensor settlement but could still pursue his
employment-related claims against Prime and Parker.  Because the “net recovery”
under the CFA was less than $500,000, Prime and Parker invoked the clause in
the Settlement Agreement and Valls received nothing.





[4] The lawyer appellees
include Johanson and his firm, Johanson & Fairless, L.L.P., Joe House, Mark
Wham, and their firm, House & Wham, L.L.P.  To the extent necessary, we
will sometimes refer to these parties collectively as the “Lawyers.”





[5] In their first reply
point, appellees contend Valls waived his right to appeal from the summary
judgment by failing to respond to the motion.  In support, they cite one of the
trial court’s local rules which states, “Failure to file a response [to a
motion] may be considered a representation of no opposition.”  Fort Bend (Tex.) Civ. Dist. Ct. Loc. R.
3.3.2.

However, although a district court may enact local
rules governing practice in that court, a local rule may not conflict with the
Texas Rules of Civil Procedure and cannot be used to decide the merits.  See
Tex. R. Civ. P. 3a; Approximately $14,980.00 v. State, 261 S.W.3d 182,
188–89 (Tex. App.—Houston [14th Dist.] 2008, no pet.); Approximately
$1,589.00 v. State, 230 S.W.3d 871, 874 (Tex. App.—Houston [14th Dist.]
2007, no pet.).  We cannot apply Local Rule 3.3.2 in such a fashion as to trump
Rule 166a(c), which obligates the summary-judgment movant to prove his
entitlement to summary judgment, or to decide the merits of Valls’s appeal.  See
Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678 (Tex. 1979); Approximately $14,980.00, 261 S.W.3d at
189; Approximately $1,589.00, 230 S.W.3d at 874.  Accordingly, we
overrule appellees’ first reply point.





[6] Emphasis added.





[7] In addition, Prime and
Parker claim a defect in Valls’s notice of appeal precludes him from
complaining about the summary judgment on his breach-of-contract claims. 
Specifically, they argue Valls was required to file a separate notice of appeal
as to each ruling he intended to challenge on appeal, including an
interlocutory order from April 2007 in which the trial court ruled the
Settlement Agreement’s distribution provisions were unenforceable.  We
disagree.  A notice of appeal need not identify every adverse interlocutory
ruling the appellant intends to challenge; instead, the notice must state only
the date of the judgment or order from which he appeals – in this case, the
order granting summary judgment.  See Perry v. Cohen, 272 S.W.3d 585,
587 (Tex. 2008) (citing Tex. R. App. P. 25.1).  We also note, parenthetically,
that even if appellees’ novel interpretation of the rules were actually
correct, dismissal of appeals for harmless procedural defects is disfavored.  See
id.; Verburgt v. Dorner, 959 S.W.2d 615, 616 (Tex. 1997); see also
In re Brookshire Grocery Co., 250 S.W.3d 66, 73 (Tex. 2008) (orig.
proceeding) (Hecht, J., dissenting) (“This court has labored long and hard to
remove as many procedural traps from our rules as possible.  Litigants are
entitled to have their disputes resolved on the merits, not on unnecessary and
arcane points that can sneak up on even the most diligent of attorneys.”)
(citation omitted).





[8] During oral argument,
appellees’ counsel conceded the Settlement Agreement contains no other method
for calculating “net recovery” except for the formula recited in the “example”
and “illustration” paragraphs.





[9] Valls argues in the
alternative that, if the Settlement Agreement and CFA were read together as one
document, the conflict between their respective formulas creates an ambiguity
to be resolved by the trier of fact rather than by summary judgment.  However,
because we cannot properly interpret these two documents together, we need not
reach this alternative argument.





[10] Emphasis added.





[11] Appellant also contends
the trial court erred by granting summary judgment on his conspiracy
allegations against the Lawyers.  However, Valls provides no substantive
analysis or legal authority to support that conclusion; therefore, that
argument has been waived.  See Tex. R. App. P. 38.1(i); Clearview
Props., L.P. v. Prop. Tex. SC One Corp., 287 S.W.3d 132, 142 (Tex.
App.—Houston [14th Dist.] 2009, pet. denied).





[12] For example, the letter
Agreement was addressed not to Valls directly, but instead to his attorney,
Steve Bryant.  The Agreement also recites, “Mr. Valls will be paid through the
Law Office of David Groner[.]”  Finally, the Agreement concludes by instructing
Bryant, “If this agreement is acceptable to you and your client, Michael
W. Valls, please have Mr. Valls execute this agreement in the space below
confirming his acceptance” (emphasis added).