Reversed and Remanded and Opinion filed December 16, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00767-CV

___________________

 

Juliane Bridget Jones, Appellant

 

V.

 

Landry’s Seafood Inn & Oyster
Bar-Galveston, Inc., Appellee



 



 

On
Appeal from the County Civil Court at Law No. 3

Harris County,
Texas



Trial Court Cause No. 915046

 



 

 

OPINION

Juliane Bridget Jones appeals a
summary judgment in favor of appellee, Landry’s Seafood Inn & Oyster Bar-Galveston,
Inc. (“Landry’s”), in Jones’s suit for strict products liability, negligence,
breach of implied warranty, and promissory estoppel.  We reverse and remand.

Background

On January 4, 2008, Jones and her mother ate lunch at
Grotto, a Houston restaurant owned by Landry’s.  Jones ordered “Oysters Mimmo,”
which she described in her petition as a “breaded, cooked oyster dish” and more
specifically in her summary-judgment affidavit as a dish made of “processed,
ground oyster meat.”  Jones contends she cracked a molar on a “non-comestible,
hard object” while eating this dish.  The restaurant manager, Callum Gray, who
was summoned to the table, inspected the object and stated it was a pearl, but
Jones and her mother disagreed the object was a pearl.  According to Jones,
Gray then told her the restaurant would pay for repair of her tooth.  Jones alleges
she received dental care the next day in Houston and then subsequent treatment in
Chicago, where she is a student.

Jones sued Landry’s for strict products liability,
negligence, breach of implied warranty, and promissory estoppel.[1]  As damages, Jones
seeks the amount of her dental expenses, pain and suffering, and mental
anguish.  Landry’s filed a motion for summary judgment, seeking traditional
summary judgment on the ground that all of Jones’s claims are barred by statute
and asserting a no-evidence ground on Jones’s promissory-estoppel claim.  On
August 25, 2009, the trial court signed an order granting Landry’s motion for
summary judgment and ordering that Jones take nothing on her claims.

Traditional Summary Judgment

In her first issue, Jones challenges the traditional
summary judgment on her claims.  A party moving for traditional summary
judgment must establish there is no genuine issue of material fact and it is
entitled to judgment as a matter of law.  See Tex. R. Civ. P. 166a(c); Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215–16 (Tex. 2003). 
A defendant moving for summary judgment must conclusively negate at least one
element of the plaintiff’s theory of recovery or plead and conclusively
establish each element of an affirmative defense.  Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  If the defendant establishes its
right to summary judgment, the burden shifts to the plaintiff to raise a
genuine issue of material fact.  Id.  We review a summary judgment de
novo.  Knott, 128 S.W.3d at 215.  We take as true all evidence
favorable to the nonmovant and indulge every reasonable inference and resolve
any doubts in her favor.  Id.

Landry’s moved for traditional summary
judgment on the ground that Jones’s claims are barred under section 82.004 of
the Texas Civil Practice and Remedies Code, which provides in pertinent part:

(a) 
In a products liability action, a manufacturer or seller shall not be liable
if: 

 

(1) the product is inherently unsafe and the product is
known to be unsafe by the ordinary consumer who consumes the product with the
ordinary knowledge common to the community; and

 

(2) the product is a common consumer product intended for
personal  consumption, such as: 

 

(A) sugar,
castor oil, alcohol, tobacco, and butter, as identified in Comment i to Section
402A of the Restatement (Second) of Torts; or 

 

(B) an oyster.

 

(b)
For purposes of this section, the term “products liability action” does not
include an action based on manufacturing defect or breach of an express
warranty.

 

Tex. Civ. Prac. & Rem.
Code Ann. § 82.004 (West Supp. 2009).

In its motion, Landry’s generally asserted Jones’s claims
are barred under this statute but did not provide supporting argument.  In its
appellate brief, Landry’s seems to advance two reasons Jones’s claims are
barred under the statute: (1) the object on which she broke her tooth was a
pearl, which Landry’s characterizes as “an object in an oyster”; or (2) regardless
of the identity of the object, “the product that is the basis of this case is an
oyster . . . .”

Jones correctly notes Landry’s failed to establish as
a matter of law that the object on which she broke her tooth was a pearl.[2]  Nonetheless,
Jones contends that Landry’s failed to prove Jones’s claims are barred under section
82.004 regardless of the identity of the object.  As Jones explained in her
affidavit, the product she consumed was not “a simple ‘oyster’”; rather, the
product was Oysters Mimmo—“a cooked oyster dish made of processed, ground
oyster meat.”  Further, Jones averred the restaurant manager informed her that the
meat was processed before it arrived at the restaurant and the personnel then
prepared the dish.  Therefore, Jones contends (1) section 82.004 does not apply
to her claims because they are based on a manufacturing defect; see id.
§ 82.004(b); or alternatively (2) even if section 82.004 does apply, Landry’s did
not establish, much less offer any evidence, that the product at issue is
commonly known to be unsafe; i.e., although arguably it is ordinary knowledge
that one may become sick from eating a contaminated raw oyster or encounter a
pearl in an oyster which is still in its shell, it is not ordinary knowledge
that a dish made of processed, ground oyster meat will contain an inedible
object, even a pearl.  See id. § 82.004(a)(1).  We agree with Jones’s
first contention; thus, we need not address the second contention.[3]

In her petition, Jones did not specifically use the
term “manufacturing defect” to describe her claims.  However, a court considers
the substance, not the label, of a claim to determine its nature.  See Ortiz
v. Collins, 203 S.W.3d 414, 421 (Tex. App.—Houston [14th Dist.] 2006,
no pet.).  “A manufacturing defect exists when a finished product deviates, in
its construction or quality, from the specifications or planned output in a
manner that renders it unreasonably dangerous.”  Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 600 (Tex. 2004).

In this case, Jones complains of the manner in which
Landry’s manufactured the Oysters Mimmo; i.e., the restaurant allowed an
inedible object to be incorporated into a dish made of ground oyster meat—whether
the object was present when the restaurant received the meat, and the
restaurant personnel failed to detect and remove the object while preparing the
dish, or whether the restaurant personnel inadvertently placed the object in
the dish.  See Stanford v. Dairy Queen Prods. of Tex., 623 S.W.2d
797, 805 (Tex. App.—Austin 1981, writ ref’d n.r.e.) (recognizing restaurant
employee was
“literal ‘manufacturer’” of sandwich on which customer
became ill in the sense that employee actually assembled various ingredients, processed them, and prepared sandwich
from the various ingredients).  Therefore, in essence, Jones alleges that the
finished product differed in terms of construction and quality from the
restaurant’s planned output in a manner that rendered it unreasonably
dangerous.  

In sum, Jones’s claims are not barred under section
82.004 because they are based on an alleged manufacturing defect.  See
Tex. Civ. Prac. & Rem. Code Ann. § 82.004(b);  Am. Tobacco Co., Inc. v.
Grinnell, 951 S.W.2d 420, 434 (Tex. 1997) (holding plaintiff’s complaint
that cigarettes produced by defendant tobacco company contained pesticide
residue which caused plaintiff’s illness could allege a manufacturing-defect
claim; although all cigarettes potentially contain pesticide residue, it is not
an ingredient tobacco company intended to incorporate into its cigarettes).  Accordingly,
the trial court erred by granting traditional summary judgment on Jones’s claims. 
We sustain her first issue.

No-Evidence Summary Judgment

Because the trial court erred by granting traditional
summary judgment on Jones’s claims, we must also consider her second issue,
challenging no-evidence summary judgment on the promissory-estoppel claim.  See Knott, 128 S.W.3d at 216 (recognizing that, when
trial court does not specify in its order grounds relied on in granting summary
judgment, appellate court must affirm if any ground presented to the trial
court and preserved for appellate review is meritorious).  After adequate time
for discovery, a party may move for summary judgment on the ground there is no
evidence of one or more essential elements of a claim or defense on which an
adverse party would have the burden of proof at trial.  Tex. R. Civ.
P. 166a(i); W. Invs., Inc. v. Urena, 162
S.W.3d 547, 550 (Tex. 2005).  The movant must state the elements on
which there is no evidence.  Tex. R. Civ.
P. 166a(i).  Unless the respondent produces summary-judgment
evidence raising a genuine issue of material fact on the challenged element,
the trial court must grant the motion.  Id.; Urena, 162 S.W.3d at 550.

The elements of a promissory-estoppel claim are a
promise, the promisor foreseeing that the promisee will rely on the promise,
and detrimental reliance by the promisee. Simulis, L.L.C. v. Gen. Elec.
Capital Corp., No. 14-06-00701-CV, 2008 WL 1747483, at *2 (Tex.
App.—Houston [14th Dist.] Apr. 17, 2008, no. pet.) (mem. op.) (citing English v.
Fischer, 660
S.W.2d 521, 524 (Tex. 1983); Sandel v.
ATP Oil & Gas Corp., 243 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no pet.)).
 The basis for Jones’s promissory-estoppel claim is her allegation she
justifiably relied on the restaurant manager’s alleged promise that Landry’s
would pay her dental bills to repair the broken tooth.[4]

In its motion, Landry’s asserted Jones has no
evidence on the detrimental-reliance element of her promissory-estoppel claim. 
Specifically, Landry’s contended that Jones would have obtained repair of her tooth
regardless of whether Landry’s promised to pay; thus, Jones can present no
evidence she incurred the dental bills in reliance on Landry’s alleged promise.

In response to the motion, Jones presented, in
addition to her affidavit, a letter she wrote to an unidentified Landry’s employee
eight days after the incident, requesting reimbursement for her dental bills.  In
the letter, Jones represented that this was her second request for
reimbursement because she had already telephoned Landry’s customer-relations
department, which refused to pay her dental bills, asserting the “pearl” was
“naturally occurring.”

According to Jones’s affidavit and letter, the
following transpired between the incident and the date of the letter: at the
restaurant, the manager apologized for Jones’s injury, said Jones should
immediately seek a dentist, and stated Landry’s customer-relations office would
contact her to “handle the billing”; the next morning, Jones consulted a
dentist in Houston, who opined that the repair entailed a crown and the “large
possibility of a root canal” due to “significant trauma”; the dentist placed a
temporary crown and took an impression for a permanent crown; the next day, Jones
returned to her home in Chicago; and while awaiting the permanent crown, she
experienced pain and inability to chew solid food, which affected her work as a
music composer.  When she wrote the letter, Jones was awaiting the permanent
crown and planned to consult a “root canal specialist” to determine if her
“nerve had died.”  She enclosed the bill from the Houston dentist and said “[t]here
will be a second bill from the work done in Chicago.”  In her affidavit, Jones
indicated she presently continued to experience soreness and inability to chew
without pain due to “surgeries” but could not afford to obtain further
treatment.

Relative to the issue of whether Jones
relied on the manager’s promise, she stated the following in her affidavit:

Had
I not held [Gray’s] assurance of payment to be the good faith word and promise
of Landry’s (which I most certainly did), I would not have taken the exact same
steps to get treatment, and would have curtailed the amount of treatment that I
received. I most likely would not have immediately gone to see Dr. Ellen Lim,
the friend of my mother’s who was the first dentist who treated me.  I would
have considered seeing a cheaper dentist, going to a dental school, or waiting to
resolve the situation in Chicago had I known that Landry’s would not pay for my
tooth.  I was following [Gray’s] instructions to immediately find a dentist.  I
expected [Gray] to speak truthfully on behalf of his company. . . . I took
immediate action to find a dentist in Houston, because I was following the
directions of the manager.  I wanted to take care of the issue right away, in
direct response to [Gray’s] statement that the company would pay for the repair
of my tooth.

 

We conclude Jones presented a genuine issue of
material fact regarding reliance on Landry’s promise to pay her dental bills by
averring she would have curtailed the treatment she received by considering less
expensive care or postponing treatment, if not for the promise.  Jones directly
indicated she incurred at least some of her dental bills—for the initial care
she received in Houston the day after the incident—in reliance on Landry’s
alleged promise to pay.  Jones also indicated she obtained some dental care after
Landry’s customer-relations department refused reimbursement because she
requested reconsideration before receiving her permanent crown and the
referenced “surgeries.”  Nevertheless, the summary-judgment evidence also
raises a fact issue on whether Jones obtained at least some of this subsequent
treatment in reliance on Landry’s earlier promise, despite its intervening
refusal, because it is a reasonable inference that, once Jones received a
temporary crown, replacement with a permanent crown was necessary.  

Landry’s contends that Jones’s averments about the
different treatment she might have pursued are vague.  However, any response to
this summary-judgment ground necessarily has somewhat of a speculative aspect
because Landry’s presented an issue regarding what action Jones would have
taken if a certain promise had not been made when, according to Jones,
the promise was indeed made.  Under the circumstances of this
promissory-estoppel claim, Jones’s averment that she “would have” curtailed the
treatment if not for Landry’s promise was sufficient to raise a genuine issue
of material fact on the detrimental-reliance element although she presented
several alternate scenarios she “likely” would have considered.

Finally, Landry’s also asserts that Jones did not
deny she needed dental care and would have sought the “emergency treatment” regardless
of Landry’s promise.  However, the fact that Jones needed dental care does not constitute
evidence she would have necessarily sought the treatment.  Further, in her
summary-judgment evidence, Jones never used the term “emergency,” assuming,
without deciding, this term might raise a reasonable inference that a person
would have necessarily obtained immediate care, regardless of whether payment
was guaranteed.

Accordingly, the trial court erred by granting
no-evidence summary judgment on Jones’s promissory-estoppel claim.  We sustain
her second issue.

We reverse the trial court’s summary judgment on all of
Jones’s claims and remand for further proceedings consistent with this opinion.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

Panel consists of Justices
Anderson, Frost, and Seymore.

 









[1] Jones also pleaded res
ipsa loquitur, and Landry’s moved for summary judgment on this “cause[] of
action.”  However, res ipsa loquitur is simply a rule of evidence by
which negligence may be inferred by the jury when the circumstances surrounding
the incident constitute sufficient evidence of the defendant’s negligence to
support such a finding and is not a separate cause of action.  Haddock v.
Arnspiger, 793
S.W.2d 948, 950 (Tex. 1990).  Therefore, we will treat the res
ipsa loquitur pleading as merely a theory to support the negligence claim.





[2]
In an internal written report of the incident, the
restaurant manager described the object as a “very small pearl in oyster” and
stated, “[c]ustomer bit into oyster and said that the small pearl cracked her
tooth.”  In Jones’s affidavit, she averred the object “did not really look like
a pearl to me, and I believe it may have been a contaminant that was mixed or
dropped into the oyster dish during shucking, processing, or frying.”  Jones
also presented an affidavit of her mother, who averred that she held the object
and it “was about half the size of a cooked long grain of rice, dark brown to
black, very hard and sharp . . . sharp enough to feel it might cut my finger”
and she told the manager it did not “look anything like a pearl, it’s sharp and
it’s hard like a rock.”  Landry’s did not present evidence demonstrating its
manager possessed some expertise that rendered his opinion conclusive on the
identity of the object.  Further, although Jones averred the manager kept the
object after the incident, Landry’s presented no evidence that it had the
object tested or examined by any sort of expert on pearls.  Accordingly, the
evidence merely reflects contrasting opinions by laymen, and thus raises a
genuine issue of material fact, regarding the identity of the object.

 





[3]
At some points in her appellate brief, Jones suggests
her “manufacturing defect” argument applies to all her claims, but, at other
points, suggests it applies to only her strict-product-liability action.  We
liberally construe her brief as presenting the “manufacturing defect” argument relative
to all her claims.





[4] Jones did not
specifically use the term “promissory estoppel” in her petition, but we
conclude, and all parties seem to agree, her factual allegations set forth such
a claim.  See Ortiz, 203 S.W.3d at 421.