

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00119-CV

———————————————

PAUL TOLSTYGA, Appellant

V.

TOLL BROS., INC. AND TOLL DALLAS TX, LLC, Appellees

---

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-318611-20

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

After sustaining Appellees Toll Brothers, Inc. and Toll Dallas TX, LLC's (collectively Toll) objections to Appellant Paul Tolstyga's summary judgment evidence, the trial court granted Toll's traditional motion for summary judgment. In three issues, Tolstyga complains that the trial court erred by striking the offending portions of his affidavit and accompanying Exhibits A-1 through A-4 and by granting Toll's motion for summary judgment. We affirm.

## I. BACKGROUND

This dispute began around 2007 with the development of a residential subdivision known as The Reserve. Tolstyga owns property neighboring The Reserve and has made repeated claims of damage to his property, including a pond located on his property, as a result of the development. Tolstyga's complaints have resulted in multiple lawsuits and settlement agreements.

### A. Tolstyga – RP25

RP25 was the original developer of The Reserve. Tolstyga made repeated complaints to RP25 about an increased volume and rate of storm water runoff from The Reserve and the resulting damage to his property. On October 15, 2007, Tolstyga and RP25 reached a settlement agreement concerning Tolstyga's claims. However, on October 20, 2008, Tolstyga filed suit against RP25, stating that the settlement agreement was limited to losses, costs, expenses, damages, liabilities, actions, causes of action, or claims relating to matters that occurred prior to the date of the settlement

agreement. Tolstyga claimed that excessive water and silt continued to inundate his pond. He asserted causes of action for violation of the Texas Water Code, as well as nuisance, trespass, negligence, and breach of contract.

The parties reached a second settlement agreement on December 21, 2009. In that agreement Tolstyga agreed to release RP25 and its "successors and assigns" from

> all claims, demands, liabilities, suits, causes of action, rights or damages . . . ., whether known or unknown and whether fixed or contingent that Tolstyga has now or may have based upon or arising out of or related to any act, fact, conduct or omission, contract, agreement, obligation, representation, statement, warranty, occurrence, event or other matter alleged or which might have been alleged in the Lawsuit, including but not limited to all Claims based on or which might have been based on, arising out of, or related to the Development, the Property, the Ponds, and the matters related in the Lawsuit.

As a result of the second settlement agreement, Tolstyga dismissed his suit against RP25.

**B. Tolstyga – Toll**

Toll purchased The Reserve from RP25 on April 16, 2010. Shortly after, on May 23, 2010, Tolstyga contacted an attorney representing Toll and expressed his ongoing concerns with The Reserve, including excess water and silt on his property. On August 20, 2010, Tolstyga contacted Tom Murray, Group President of Toll, asking what his intentions were to help with Tolstyga's complaints. There were multiple exchanges between the attorneys for Tolstyga and Toll discussing Tolstyga's concerns and Toll's position with regard to those concerns.

On October 13, 2010, Tolstyga's attorney sent Toll's attorney a list of demands to avoid litigation that included, among other demands, a solution to slow down the water; clean-up of the entire pond, including silt RP25 failed to remove; reimbursement of engineer and attorney fees and the cost of fabric to stop the sediment; and a flood study. Despite the ongoing discussions between the attorneys, Tolstyga contacted Murray directly and asked what Toll's intentions were concerning his damages. In response, Murray stated that Toll's intentions had not changed and that RP25 was the one who had damaged Tolstyga's pond. Murray noted that Toll typically removes any additional silt from development after the completion of the development. Murray stated that the attorneys for both parties had discussed reasonable measures and encouraged Tolstyga to have his attorney work with Toll's attorney on a solution. Despite ongoing negotiations, Toll and Tolstyga never reached a settlement agreement.

## C. Tolstyga – Shannon Nave and Baird, Hampton & Brown, Inc.

Prior to negotiations with Toll, Tolstyga had a preliminary evaluation from an engineering firm that found that as a result of The Reserve development, there were greater storm water discharge rates on Tolstyga's property that could raise water surface elevations. Tolstyga's attorney thought it would be helpful in negotiations with Toll to do another drainage study to presumably show the same results. Tolstyga hired Shannon Nave, a principal with Baird, Hampton & Brown, Inc., to conduct the study, and Tolstyga's attorney told Nave the ultimate goal of the study. Nave completed the

study in August 2013 and concluded, however, that The Reserve's detention pond would provide a lower peak discharge rate at Tolstyga's property than was experienced prior to the development and that the water surface on Tolstyga's property would not increase. According to Tolstyga, the new study was not helpful to him and helped validate Toll's position. After the Nave study, negotiations between Tolstyga and Toll ended.

In 2017, Tolstyga employed another engineering firm to review Nave's results. That study disputed the findings of Nave and agreed with the prior study that The Reserve Development resulted in greater discharge rates on Tolstyga's property.

On July 19, 2019, Tolstyga filed suit against Nave and Baird, Hampton & Brown, Inc. for deceptive trade practices and fraudulent misrepresentation. Tolstyga complained that as a result of the Nave study, Toll refused to make any changes to The Reserve, and he was not able to get the monetary and actual relief from Toll for which his attorney had been negotiating. The trial court granted Nave and Baird, Hampton & Brown's motion for summary judgment based upon the statute of limitations.

## D. Tolstyga – The Reserve HOA and Toll

On August 12, 2020, Tolstyga filed suit against The Reserve at Colleyville Residential Community, Inc. (The Reserve HOA) and RTI Community Management Associates, Inc. (RTI) alleging causes of action for nuisance, trespass, negligence, and gross negligence. Tolstyga again sought relief for damages to his property caused by

5

the excess water from The Reserve. Tolstyga later amended his pleadings to add Toll as a defendant and added causes of action against Toll for fraud, breach of contract, and promissory estoppel.

The trial court signed an Order of Non-Suit Without Prejudice as to the claims against The Reserve HOA and RTI. The trial court further signed an Order of Partial Non-Suit Without Prejudice as to Tolstyga's claims against Toll for nuisance, trespass, violations of the Texas Water Code,[1] and breach of contract.

### E. Toll's Summary Judgment

Prior to Tolstyga filing his notice of non-suit for his claims against The Reserve HOA and RTI and the partial non-suit of certain claims against Toll, Toll filed a traditional motion for summary judgment. After the non-suit, the remaining causes of action against Toll were negligence, gross negligence, fraud, and promissory estoppel.

As relevant to the remaining causes of action, Toll argued that it was entitled to summary judgment because, as RP25's "successor and assign," Tolstyga released his claims in the second settlement agreement. Toll further argued that the claims for promissory estoppel and fraud also fail because there was no promise or material representation by Toll on which Tolstyga reasonably relied. Tolstyga filed a response in which he argued that because his claims are based upon misrepresentations made by Toll, the release provision from the second settlement agreement does not apply to

---

[1]We note that Tolstyga's amended petition does not allege a cause of action against Toll for violations of the Texas Water Code.

his claims. Tolstyga included as summary judgment evidence his own affidavit, emails from Murray and Toll's attorney, a letter from Toll's attorney to his attorney, and a letter from the Texas Commission on Environmental Quality (TCEQ) to Toll.

Toll filed an objection to Tolstyga's summary judgment evidence, arguing that Tolstyga's affidavit violated Rule 408 of the Texas Rules of Evidence; contained conclusory, inaccurate, and misleading statements; and violated the Sham Affidavit Rule. The trial court sustained Toll's objections and struck the offending parts of Tolstyga's affidavit as well as the emails and letters. After a hearing, the trial court granted Toll's motion for summary judgment and ordered that Tolstyga take nothing by his alleged claims.

## II. ISSUES AND STANDARDS OF REVIEW

Tolstyga argues in his first issue that his affidavit was not a sham and that the trial court erred by striking it. In his second issue, he argues that the trial court erred by striking his evidence of Toll's promises pursuant to Rule 408 of the Texas Rules of Evidence. In his third issue, he contends that the trial court erred by granting Toll's motion for summary judgment because there was a material fact issue regarding his claims for promissory estoppel, negligence, and fraud.

We review a trial court's decision to exclude summary-judgment evidence for an abuse of discretion. *Hobson v. Francis*, No. 02-18-00180-CV, 2019 WL 2635562, at *6 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.). A court abuses its discretion if it acts without reference to any guiding rules or principles. *Carpenter v.*

7

*Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). An appellate court must uphold a trial court's evidentiary ruling if there is any legitimate basis in the record to support it. *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 119 (Tex. 1999) (op. on reh'g).

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). If a trial court's order does not specify the grounds upon which it granted summary judgment, we must affirm if any of the theories presented to the trial court and preserved for appeal are meritorious. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

### III. ANALYSIS

**A. Exclusion of Tolstyga's Affidavit and Exhibits**

The trial court's order excluding the offending portions of Tolstyga's affidavit and exhibits does not state the basis for the exclusion. We must uphold the ruling if there is any legitimate basis in the record to support it. *Drilex Sys., Inc.*, 1 S.W.3d at 119. We will first address Tolstyga's second issue.

Rule 408 provides:

(a) Prohibited Uses. Evidence of the following is not admissible either to prove or disprove the validity or amount of a disputed claim:

 (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

 (2) conduct or statements made during compromise negotiations about the claim.

(b) Permissible Uses. The court may admit this evidence for another purpose, such as proving a party's or witness's bias, prejudice, or interest, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Tex. R. Evid. 408.

The record shows, and Tolstyga does not dispute, that the parties were involved in settlement negotiations at the time of the communications included in Tolstyga's summary judgment evidence. Tolstyga contends, however, that Rule 408 is not applicable because the communications were not made to prove the validity of any claim that was in dispute. We disagree.

Tolstyga made demands to avoid litigation that included cleaning up his pond. After making those demands and while the parties were negotiating a settlement, Tolstyga sent an email to Murray asking what Toll's intentions were as far as his damages were concerned. Murray responded by stating that they measured the pond before closing on the property and that, after the completion of the development, they would measure again and remove any additional silt. In another communication,

9

Toll's attorney stated, "Toll has consistently acknowledged its obligation to clean Mr. Tolstyga's pond and, in fact, has been negotiating toward that end for approximately two years." Tolstyga contends that these communications show that there was no dispute that Toll represented it would clean up his pond.

The communications do not establish that there was no dispute between the parties as to make Rule 408 inapplicable. Rather, the communications show that as part of an ongoing dispute, Toll was attempting to negotiate a solution. Murray stated that it was Toll's "intention to be a good neighbor" and encouraged Tolstyga to work with them on a solution. Although the communications show an intention on the part of Toll to clean up the pond, those intentions were expressed as part of the negotiation to settle the dispute. We hold that the communications were made during negotiations of a disputed claim and were inadmissible under Rule 408. Because the parties were negotiating in an adversarial context, any reliance by Tolstyga on statements made during the negotiation process was unjustified and unreasonable. *Ortiz v. Collins*, 203 S.W.3d 414, 422 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The trial court did not abuse its discretion in excluding portions of Tolstyga's affidavit relying on statements made during settlement negotiations and the accompanying exhibits. We overrule Tolstyga's second issue. Because we find that the trial court did not abuse its discretion in excluding the offending portions of Tolstyga's affidavit under Rule 408, we need not address Tolstyga's first issue that the

trial court erred by excluding portions of his affidavit as a sham affidavit. *See* Tex. R. App. 47.1.

## B. Summary Judgment

Tolstyga acknowledges that his remaining claims for negligence, fraud, and promissory estoppel "rest on Toll's representations as to its intent to clear the silt from Tolstyga's pond once the development was complete." We held that those representations were made during the negotiation of a disputed claim and were inadmissible under Rule 408. Because any reliance by Tolstyga on statements made during the negotiation process was unjustified and unreasonable, the trial court did not err by granting summary judgment as to Tolstyga's claims for negligence, fraud, and promissory estoppel. *See Ortiz*, 335 S.W.3d at 422. We overrule Tolstyga's third issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  January 25, 2024