In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00199-CV
_____

**ROLAND KELLER AND DEBORAH KELLER, Appellants**

**V.**

**LEGEND HOME CORPORATION, LEGEND CLASSIC HOMES, LTD, AND WUIC INSURANCE AGENCY, INC. D/B/A HOME OF TEXAS, Appellees**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 15-01-00799-CV**

**MEMORANDUM OPINION**

In five issues, the purchasers of a newly-built home claim the trial court erred by granting the defendants' respective motions for summary judgment on the purchasers' claims for damages they alleged resulted from defects in the foundation of their home. In a sixth issue, the homeowners argue the trial court erred by granting judgment notwithstanding the jury's verdict on the homebuilder's counterclaim for attorney's fees. For the reasons explained below, we conclude the evidence

1

authorized the trial court to grant the defendants' motions for summary judgment. We also conclude the trial court erred, following a trial solely on the issue of attorney's fees, in granting the homebuilder's motion for judgment notwithstanding the verdict.

## Background

Statutes of limitation prevent a party from waiting years after it is on notice of sufficient facts about its claim before suing even if the party's claim had merit. Our resolution of the appeal hinges largely on whether the trial court applied the law correctly when evaluating the homebuilder's arguments claiming most of the purchasers' claims were barred by limitations.

In August 2004, Roland and Deborah Keller agreed to purchase a new home from Legend Classic Homes, Ltd. (Classic Homes). In September 2004, the Kellers closed on the home, which is located in Montgomery County, Texas. For the Kellers' benefit, Classic Homes purchased a ten-year limited warranty on the home from Warranty Underwriters Insurance Company (Underwriters). Underwriters' limited warranty supplemented the warranties that Classic Homes provided to the Kellers.

2

The limited warranty available under Underwriters' policy included coverage against "Major Structural Defects."[1]

In October 2005, the Kellers sent a letter to Classic Homes and Underwriters notifying them of the many defects the Kellers claimed existed in their home. In part, the 2005 letter states:

> In the front corner of the house (where the formal dining room is) there are cracks in the foundation. We would like to receive a copy of the foundation report, which certifies that the post-tention [*sic*] slab was laid according to specifications. In addition, though we have been assured by [Classic] Homes that these cracks are not an issue, we would like [Classic] Homes to send their foundation company's expert to see the problem and provide a professional opinion in writing.

The Kellers and Classic Homes failed to resolve the concerns the Kellers had about the cracks in their foundation. In late-January 2006, Underwriters sent the Kellers a letter declaring the parties at an impasse. In that letter, Underwriters notified the Kellers that, under the limited warranty, they could submit their claims to arbitration.[2]

---

[1] By definition, the term "Major Structural Defects" includes a home's foundation system and footings if the foundation suffered (1) actual physical damage that (2) caused the failure of the foundation or other load-bearing component of the home and (3) "affects [the foundation's] load-bearing function to the degree that it materially affects the physical safety of the occupants of the home."

[2] The Kellers' home warranty reflects that arbitration was not a requirement under the warranty on the home. The Kellers elected not to arbitrate their claims.

In May 2010, the Kellers retained an attorney to represent them regarding their foundation-damage claim. On May 10, 2010, the Kellers' attorney notified Legend Home Corporation[3] and Classic Homes (collectively, "Legend") that construction defects existed in the Kellers' home, including but "not limited to a failing foundation, cracked mortar, cracked bricks, cracked ceramic tiles and improper drainage." The letter states that Legend and Underwriters each violated the Texas Residential Construction Liability Act and the Deceptive Trade Practices and Consumer Act (DTPA) in the manner they handled the Kellers' claims relating to both the foundation and the drainage of the Kellers' lot.[4] In late-June 2011, Underwriters advised the Kellers that it had decided to deny warranty coverage on the Kellers' foundation-damage claim.

---

[3] Throughout the trial, the parties treated Legend Home Corporation as the general partner of Classic Homes, a limited partnership. That said, the purchase agreement associated with the sale of the home is between the Kellers and Classic Homes and does not include Legend Home Corporation.

[4] In late-May 2011, the Kellers secured a report from a professional engineer evaluating the foundation and drainage problems the Kellers were experiencing with their home. The Kellers' attorney sent the report to Legend and Underwriters. The report states that the Kellers' foundation "is suffering from post-construction differential foundation movements" that "have caused damages to the house and the foundation . . . that are consistent with the pattern(s) of surveyed movements."

In late-December 2011, Legend and the Kellers entered into an agreement in which Legend agreed to perform certain work to address the drainage problems that existed on the Kellers' property. The letter reflects that the problem the work Legend agreed to perform work to improve the drainage on the Kellers' lot to prevent water from pooling near the foundation of the home. Under the repair agreement, Legend agreed to install a French drain on the Kellers' property, pay the Kellers' attorney's fees of $3,347,[5] and pay the Kellers' expert fees of $6,782. The agreement contemplated that six months after Legend installed the French drain, if the drainage system was working, and subject to the Kellers' approval, Legend was to repair cosmetic defects that had been caused from movement attributable to the foundation of the home. The repair agreement, however, specifically reserved to the Kellers their rights to sue Legend on "any claims they may have relating to the need for foundation work."[6] In the 2011 agreement, Legend represented that it believed the foundation was performing "within tolerances," and that any movement the foundation had suffered could be "remedied by the repair plan and the continued maintenance proposed herein."

---

[5] For simplicity, we have rounded all monetary figures to whole numbers.

[6] Underwriters is not a party to the repair agreement that Legend reached with the Kellers.

In mid-February 2012, Legend installed the French drain called for by the repair agreement. By mid-December 2012, after Legend performed the six-month inspection, Legend's attorney sent the Kellers and their attorney a letter stating that Legend's experts had determined the foundation was performing as intended. The letter also states that Legend's expert believed the Kellers had modified the landscaping on their property, which resulted in problems that their warranties on the home did not cover. Nonetheless, Legend offered to correct the problems that it claimed the Kellers created by modifying the landscaping of their lot, but Legend stated that it would not warrant the quality of the additional work it performed to correct the drainage problems the Kellers created by altering the landscaping of their lot. Legend asked the Kellers to provide dates for Legend to do the work and to complete the cosmetic work that it promised to perform under the repair agreement. The Kellers never responded to the letter.

In late-September 2014, the Kellers retained another attorney to represent them on their foundation-damage claim. Their second attorney sent Legend and Underwriters a letter demanding $189,950 in damages and attorney's fees, which the Kellers attributed to defects in the foundation and in the drainage of the lot associated with their home. The demand letter alleges that when Legend built the home, it failed to create a landscape that directed water entering the lot away from

6

the foundation of the home. The demand letter also states that "water was regularly trapped [by the foundation's southeast exterior wall] for a long period of time before the Kellers began to notice signs of foundation distress[.]" According to the demand letter, "by the time the purported fix was proposed by Legend, the damage to the foundation had occurred."

On January 26, 2015, the Kellers sued Legend Home Corporation, Classic Homes, and Underwriters on their foundation-damage and drainage-defect claims. In an amended petition, the Kellers claimed that Legend breached the warranties that it extended to them when they purchased their home. The Kellers also claimed that Legend negligently performed the repairs called for under the repair agreement and that Legend failed to complete the work it agreed to perform under that agreement. Finally, the Kellers claimed that Legend violated the DTPA by failing to exercise reasonable care when it repaired the drainage problems on their lot and by defrauding them regarding the condition of their foundation. As to Underwriters, the Kellers' amended petition alleged that Underwriters breached the limited warranty by refusing their requests to repair the foundation. In addition to their breach of contract claim, the Kellers alleged that Underwriters violated the DTPA, committed fraud in connection with the sale of the home, and knowingly misrepresented the facts about whether the Kellers' foundation needed to be repaired.

In response to the suit, Legend and Underwriters filed general denials with affirmative defenses including limitations. Classic Homes filed a counterclaim against the Kellers alleging that should it prevail in defending against the Kellers' purchase-agreement claims, that the agreement required the Kellers to pay it the reasonable attorney's fees it would incur in its defense.

In May 2016, Legend and Underwriters filed traditional motions for summary judgment.[7] These motions covered all the Kellers claims except for those alleging

---

[7] While we have examined all the summary-judgment evidence in evaluating the parties' arguments, we specifically mention these exhibits supporting the motions as these exhibits are discussed in the opinion: (1) an affidavit signed by Kathleen Foley, vice president for Underwriters; (2) an affidavit signed by Lauren Sullivan, general counsel for Classic Homes; (3) the August 2004 purchase agreement between Classic Homes and the Kellers authorizing Classic Homes to build the home; (4) the September 2004 Housing and Urban Development loan-closing statement for the transaction involving the home; (5) the "Home Buyer Presettlement Orientation and Property Inspection" form on the inspection the Kellers completed when they purchased the home; (6) the Kellers' application for the limited warranty from Underwriters; (7) the limited warranty issued by Underwriters on the Kellers' home; (8) the October 2005 demand letter the Kellers sent to Classic Homes and Underwriters; (9) a January 2006 letter sent by Underwriters to the Kellers; (10) the May 2010 demand letter sent by the Kellers' first attorney to Legend and Underwriters; (11) two bids, which the Kellers obtained in May 2011, from companies to repair the foundation of the Kellers' home; (12) a copy of the December 2011 repair agreement between the Kellers and Legend; (13) a February 2012 letter sent by Legend's attorney to the Kellers' attorney transmitting a check for the Kellers' attorney's fees and expert fees; (14) exhibits proving that the Kellers and their attorney negotiated Legend's check, tendered in payment for the attorney's and expert witness fees Legend agreed to pay under the 2011 agreement; (15) a December 2012 letter from Legend's attorney to the Kellers and their attorney regarding the findings of Legend's six-month inspection; (16) the

fraud. Later, both defendants moved for summary judgment on the Kellers' claims for fraud. As to the fraud claims, Underwriters argued the Kellers could not prove fraud. As to the warranty claims, Underwriters alleged the policy did not cover the Kellers' claims. In its motion, Legend argued that the Kellers' claims were barred by the statute of repose and by the various statutes of limitation that applied to the claims. As to the repair agreement, Legend argued that it did not breach the agreement because it performed all work the Kellers allowed it to perform.

In a series of interlocutory orders, the trial court granted Legend's and Underwriters' motions for summary judgment. None of the summary-judgment orders, however, specify the grounds on which the motions were granted.

In February 2017, the trial court conducted a jury trial on Classic Homes' counterclaim for attorney's fees.[8] Three witnesses testified in the trial, Patrick Sullivan,[9] Legend's lead attorney, Lauren Sullivan, general counsel for Classic

---

September 2014 demand letter sent to Legend and Underwriters by the Kellers' second attorney; (17) excerpts from the deposition of Randolph Riddell, an engineer the Kellers hired in 2014 to evaluate the problems with the foundation of their home; (18) excerpts from Deborah Keller's deposition; (19) excerpts from Roland Keller's deposition; and (20) the Kellers' supplemental answers to Legend's interrogatories.

[8] Legend Home Corporation was not a party to the purchase agreement, so it never filed a counterclaim seeking to recover its attorney's fees.

[9] Patrick served as Legend's lead attorney throughout the proceedings.

Homes, and Deborah Keller, the only witness called by the Kellers. When Patrick testified, the trial court admitted an itemized accounting for the fees and expenses his law firm charged Legend for defending the claims the Kellers filed against Legend Home Corporation and Classic Homes. The firm's bills show that between September 2014 and January 2017, the firm charged Legend Home Corporation and Classic Homes $136,293 for attorney's fees through trial. Patrick testified of that total, he attributed $122,663 to Classic Homes. He also testified that in his opinion, Classic Homes would incur $39,600 in additional attorney's fees should the Kellers exhaust their rights to appeal. According to Patrick, the attorney's fees his firm charged Classic Homes were reasonable and they were necessary for the work that his firm did in the case.[10] When the trial ended, the jury found Classic Homes should recover $60,000 in attorney's fees. In response to a question asking about fees for the various stages of appeal, the jury found Classic Homes should recover "0."

After the jury returned its verdict, Classic Homes asked the trial court to disregard the jury's findings. In a written motion for judgment notwithstanding the verdict (JNOV), Classic Homes asked the trial court to award it $122,663 in attorney's fees through trial and $36,000 in attorney's fees. The request for fees

_____

[10] Lauren and Deborah's testimony is not relevant to the reasonableness of Classic Homes' fees.

broke the appellate fees down into each stage of any possible appeals. After a hearing, the trial court granted the motion and overturned the jury's verdict. Later, the trial court signed a final judgment ordering the Kellers to take nothing from Legend and from Underwriters. In its final judgment, the trial court awarded attorney's fees totaling the amounts Classic Homes requested in its motion for JNOV, with the appellate fees conditioned at each stage on the Kellers exercising their rights to appeal. After the trial court signed the final judgment, the Kellers moved for a new trial. In their motion, they argued the trial court erred by granting summary judgments and by disregarding the jury's verdict on Classic Homes' fees. The trial court denied the motion for new trial and the Kellers appealed.

## Issues

In issue one, the Kellers argue the trial court erred by failing to apply the discovery rule to their claims. According to the Kellers, the summary-judgment evidence reveals fact issues as to when they should have discovered the problems with their foundation. In their second issue, the Kellers contend the trial court's ruling on Legend's motion for summary judgment should be reversed because issues of material fact exist as to whether Legend acted fraudulently by concealing the problems with the foundation. In their third, fourth, and fifth issues, the Kellers argue the summary-judgment record shows that issues of material fact exist on their claims

11

that Legend breached the repair agreement, that Underwriters breached its warranty, and that Legend and Underwriters misrepresented material facts about the condition of the foundation. In a sixth and final issue, the Kellers argue the trial court erred by granting Legend's motion for JNOV.

Analysis

I. Did the trial court err in granting Legend's and Underwriters' motions for summary judgment?

A. Standard of Review

Appellate courts review a trial court's decision granting motions for summary judgment under a *de novo* standard of review.[11] We review a trial court's ruling granting a motion for summary judgment "'in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.'"[12] To prevail on a motion for summary judgment, a defendant must conclusively negate at least one element of each of the plaintiff's claims or conclusively establish all the elements of an affirmative defense on each of the plaintiff's claims.[13] When moving for summary judgment on a traditional motion,

---

[11] *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

[12] *See Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)).

and in order to establish that it is entitled to have a judgment rendered in its favor, the defendant must show that there are no genuine issues of material fact for a trier of fact to decide.[14] If the defendant meets that burden, the burden of proof then shifts to the party opposing the motion and requires that party to produce evidence showing that a genuine issue of material fact exists on the claims challenged by the motion for summary judgment.[15]

The issues the Kellers raise fall into four general categories: (1) were the Kellers' claims against Legend arising under the purchase agreement for damages to their foundation barred by limitations; (2) did Legend conclusively establish that it was entitled to summary judgment on the claims the Kellers made under the repair agreement; (3) did Underwriters conclusively establish that it did not breach the limited warranty; and (4) did Underwriters conclusively establish that it did not misrepresent the benefits available to the Kellers under the limited warranty? Because the orders granting the defendants' motions for summary judgment do not

---

[13] Tex. R. Civ. P. 166a(c); *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).

[14] Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215-16.

[15] *Chavez v. Kan. City S. Ry. Co.*, 520 S.W.3d 898, 900, 901 (Tex. 2017).

13

specify the grounds on which the motions were granted, we presume the court granted the motions on all the grounds the respective motions advanced.[16]

B. Analysis—Were the Kellers' claims against Legend arising under the purchase agreement for damages to their foundation barred by limitations?

In part, Legend's motion for summary judgment argues that the Kellers failed to timely sue on their DTPA and common law claims for breach of contract, fraud, and negligent misrepresentation. Fraud has a four-year statute of limitation, the longest period of limitations that applies to the claims that were at issue in the case.[17] For convenience, we first address whether the summary-judgment evidence conclusively proves that the Kellers failed to sue Legend within four years of the date their claims for fraud accrued.[18]

In their brief, the Kellers argue their claims for fraud accrued in September 2014, when an engineer informed them that Legend's work to repair the drainage of

---

[16] *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

[17] The statute of limitations for fraud is four years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4) (West 2002).

[18] *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 216 (Tex. 2011) ("The statute of limitations for fraud begins to run from the time the party knew of the misrepresentation."); *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997) ("Generally, in a case of fraud the statute of limitations does not commence to run until the fraud is discovered or until it might have been discovered by the exercise of reasonable diligence.").

14

their lot "merely masked the already-present foundation problems." Nonetheless, the summary-judgment evidence shows the Kellers were on notice of foundation and drainage problems associated with their home by at least 2010. On May 10, 2010, the Kellers' attorney sent Legend and Underwriters a letter threatening suit on the Kellers' foundation-defect and drainage-defect claims. The letter states the home has a "failing foundation, cracked mortar, cracked bricks, cracked ceramic tiles and improper drainage." Thus, the letter conclusively establishes that the Kellers fraud claims, as related to their home, accrued by at least May 2010. Since the Kellers did not sue Legend until January 26, 2015, more than four years after their attorney threatened suit, the trial court was authorized to find that the summary-judgment evidence revealed the four-year statute of limitations barred the claims for fraud as related to the Kellers' purchase of the home.[19]

The Kellers also claim that Legend made false and fraudulent statements to them about the condition of the home's foundation after Legend completed the drainage work it promised to perform under the repair agreement. According to the Kellers, they did not learn the drainage work would prove unsuccessful to protect the foundation from failing until they hired an engineer who informed them that their foundation had failed. In other words, they were unaware of the extent to which they

_____

[19] *Id.*

15

were damaged until they hired their own engineer. By May 2010, however, if not before, the Kellers' relationship with Legend was adversarial. In 2010, the Kellers were being represented by an attorney on their foundation and drainage claims. Thus, the nature of the relationship between Legend and the Kellers was adversarial, so they could not justifiably rely on Legend's statements about their foundation that were made after the Kellers hired an attorney.[20] Here, the summary-judgment evidence also shows that the Kellers were skeptical regarding Legend's claim that the foundation had not failed. In the May 2010 letter, the Kellers' attorney noted that the Kellers had "significant reservations about [Legend's] assessment of the foundation defects." And generally, attempted repairs by a defendant of existing or known problems will not interrupt limitations from running on a plaintiff's claims.[21] We conclude the summary-judgment evidence fails to raise a genuine issue of material fact on the Kellers' claim that the discovery rule allowed them to avoid

---

[20] *See Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 635 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Courts have repeatedly held a party may not justifiably rely on statements made by opposing counsel during settlement negotiations."); *Ortiz v. Collins*, 203 S.W.3d 414, 422 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("Generally, reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context, such as litigation.").

[21] *See Am. Air Sys. v. Book*, No. 09-15-00538-CV, 2017 Tex. App. LEXIS 2016, at *14-15 (Tex. App.—Beaumont Mar. 9, 2017, pet. denied) (citing *Pako Corp. v. Thomas*, 855 S.W.2d 215, 219 (Tex. App.—Tyler 1993, no writ)).

Legend's statute of limitations defense on the claims associated with their purchase of the home. We hold the trial court did not err in granting Legend's motion for summary judgment on the Kellers' theory that Legend defrauded them when they purchased the home.

Turning to the DTPA, breach of contract, and negligent misrepresentation claims, limitations also bars those claims.[22] The summary-judgment evidence establishes as a matter of law that the Kellers were on notice of sufficient facts regarding their various foundation-defect and drainage-defect claims by May 2010. The Kellers presented no evidence raising an issue of fact to show that limitations commenced on some date later than May 2010 on these claims. Since the Kellers

---

[22] In general, "[a] cause of action accrues when a wrongful act causes a legal injury, regardless of 'when the plaintiff learns of that injury or if all resulting damages have yet to occur.'" *Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 609 (Tex. 2017) (quoting Knott, 128 S.W.3d at 221). The discovery rule provides an exception to the general rule and "operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Wagner & Brown v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). The Supreme Court has described the discovery rule as a "'very limited exception to statutes of limitations,' and has condoned its use only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Id*. (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)). Fraudulent concealment is an equitable doctrine that "extend[s] the statute of limitations when the defendant has concealed its wrongdoing from the plaintiff." *G.R. Auto Care v. NCI Grp., Inc.,* Nos. 01-17-00068-CV, 01-17-00243-CV, 2018 Tex. App. LEXIS 6895, at *12 (Tex. App.—Houston [1st Dist.] Aug. 28, 2018, no pet.) (citing *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011)).

failed to sue until January 2015, their claims under the DTPA, breach of the purchase agreement, and negligent misrepresentation are also barred by the statutes of limitation that apply to each of those claims.[23]

C. Analysis—Did Legend conclusively establish that it was entitled to summary judgment on the claims the Kellers made under the repair agreement?

The Kellers' claims included allegations that Legend breached the 2011 repair agreement, negligently performed its work, and committed fraud in connection with the repair agreement. Under the repair agreement, Legend agreed to install a French drain on the Kellers' lot, pay the Kellers' attorney's fees and expert fees, conduct a six-month follow-up inspection of the property, and, following that inspection, repair the cosmetic defects in the home that related to any movement the home experienced due to problems with the foundation. The Kellers' petition alleges Legend breached the repair agreement by failing to (1) complete all work as agreed, (2) properly complete repairs to prevent foundation damage and failure, and (3) perform all work under the agreement in a good and workmanlike manner.

---

[23] The statutes of limitation for DTPA and negligent misrepresentation claims are two years. *See* Tex. Bus. & Com. Code Ann. § 17.565 (West 2011) (DTPA claims); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (negligent misrepresentation). The statute of limitation for breach of contract is four years. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(1).

18

In its motion for summary judgment, Legend asserted that it did not breach the repair agreement and instead performed the drainage work that the Kellers allowed it to complete. Based on our review, the summary-judgment evidence establishes that Legend installed the French drain and that Legend sent the Kellers a check to pay for their expert and attorney. In the letter accompanying the check, Legend advised the Kellers not to cash the check if they were claiming that Legend had not properly installed the French drain. The summary-judgment evidence is undisputed that the Kellers cashed the check.

Notably, the repair agreement does not represent the work Legend did under the agreement would fix the Kellers' existing foundation problems or prevent any future damages. Instead, the agreement states that Legend agreed to inspect the property six months after it completed the drainage work to determine the foundation's condition at that time. The summary-judgment evidence shows that Legend conducted a follow-up inspection after completing the drainage work under the repair agreement, and that Legend determined during the inspection the foundation was performing as intended. But when Legend asked the Kellers for permission to enter the Kellers' land to complete the cosmetic repairs under the repair agreement, the Kellers refused. In their brief, the Kellers do not claim that

19

Legend did not perform the work they allowed it to perform under the repair agreement.[24]

To prove Legend breached the repair agreement, the Kellers had to prove (1) they had a valid contract with Legend, (2) they performed or tendered performance, (3) Legend breached the repair agreement, and (4) they were damaged based on Legend's breach.[25] A breach of contract occurs "when a party fails to perform an act that it has contractually promised to perform."[26] The summary-judgment evidence conclusively established that Legend performed all the work called for by the repair agreement except the cosmetic work Legend was not allowed to perform. Since that obligation required the Kellers to allow Legend to have access to their home, the summary-judgment evidence conclusively established that Legend was excused

---

[24] The summary-judgment evidence included excerpts from Deborah Keller's deposition. In her deposition, Deborah testified that Classic Homes "did execute the drainage plan[.]" She also agreed that Classic Homes paid the attorney's fees and expert fees called for by the agreement and that Legend conducted a follow-up inspection. Near the end of her deposition, Deborah agreed that the Kellers never allowed Legend to return to their property to complete the cosmetic work called for under the repair agreement. She said they did not do so because they "wanted to kind of take a wait-and-see approach and just see how things panned out."

[25] *See Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Sullivan v. Smith*, 110 S.W.3d 545, 546 (Tex. App.—Beaumont 2003, no pet.).

[26] *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 765 (Tex. 2014) (citing Black's Law Dictionary 225 (10th ed. 2014)).

from performing that additional work.[27] We conclude the summary-judgment evidence conclusively established that Legend did not breach its obligations to the Kellers under the repair agreement.

Once Legend established that it was entitled to summary judgment on the Kellers' breach-of-the-repair agreement claim, the burden shifted to the Kellers to produce evidence raising a genuine issue of material fact to show that Legend breached the agreement. While the Kellers argue that the French drain did not function as they had hoped, they presented no evidence that any problems with the French drain caused their home's foundation to fail. And even if Legend's efforts to correct the drainage problems failed, the summary-judgment evidence established that the Kellers and Legend were in an adversarial relationship when Legend agreed to install the French drain. Given the nature of the relationship, the Kellers could not justifiably rely on Legend's alleged statements indicating that the work called for by the repair agreement would solve any drainage or foundation problems the Kellers claimed they were experiencing with their property.[28] When the Kellers failed to

---

[27] *See Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("Prevention of performance by one party excuses performance by the other party, both of conditions precedent to performance and of promise. When the obligation of a party to a contract depends upon a certain condition's being performed, and the fulfillment of the condition is prevented by the act of the other party, the condition is considered fulfilled.").

meet their burden to show they could produce evidence that genuine issues of fact remained on their breach-of-repair agreement claims, the trial court was authorized to grant Legend's motion for summary judgment on those claims.

The Kellers also claimed that Legend negligently performed the work under the repair agreement. Negligence claims are governed by a two-year statute of limitations.[29] The summary-judgment evidence established that Legend installed the French drain in February 2012, and that Legend requested access to the Kellers' home after inspecting the French drain in December 2012. Legend, therefore, conclusively established that the Kellers' claim for negligence was barred by the time the Kellers sued in January 2015.[30]

D. Analysis—Did Underwriters conclusively establish that it did not breach the limited warranty?

The Kellers sued Underwriters for breaching its obligations under the limited warranty. Underwriters prevailed on its motion for summary judgment based on coverage arguments, and it did not move for summary judgment based on its statute

---

[28] *See Ortiz*, 203 S.W.3d at 422.

[29] Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 516 n.9 (Tex. 2015) (applying two-year statute of limitations from section 16.003(a) to plaintiff's negligence claims).

[30] Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).

22

of limitations defense. On appeal, the Kellers argue that Underwriters' limited warranty covers their foundation-damage claims.

The limited warranty issued by Underwriters covers "major structural defects," a term that is expressly defined in the policy. Under the policy, a "major structural defect" exists if "actual physical damage to the designated load-bearing portions of the home caused by the failure of such load-bearing portions of a home to the extent that the home becomes unsafe, unsanitary, or otherwise unlivable." In its motion for summary judgment, Underwriters relied on excerpts from Deborah Keller's and Roland Keller's depositions to show that the problems the Kellers were complaining about in their suit never made their home "unsafe, unsanitary, or otherwise unlivable." For example, Deborah testified:

> Q. Have any of the issues that you've talked about with Mr. Sullivan [counsel for Legend] regarding the performance of the home and the claims you are here about regarding the home defects, have any of those issues created a situation where you've been prevented from living in the home?
>
> A. No.
>
> Q. Has anyone ever gotten hurt or sick due to the alleged defects?
>
> A. No.
>
> . . .
>
> Q. Did you consider the home unsafe?

A. No.

Q. Unsanitary?

A. We do have bugs and stuff at times coming through the foundation.

Q. Coming up through the foundation?

A. Yeah, sort of, I think, along the cracks a little bit. It's minor, but I wouldn't clarify it as unfit for living.

Q. Do you consider your home fit for human habitation, in other words?

A. Yes.

Roland Keller's deposition reveals that he too did not consider the home unsafe, unsanitary, or unlivable. We find no summary-judgment evidence in the record raising a fact issue to show that the Kellers' home was ever unsafe, unsanitary, or unlivable. For that reason, we hold Underwriters conclusively proved that the Kellers' home did not contain a "major structural defect" that fell within the terms of the limited warranty they received on their home.

E. Analysis—Did Underwriters conclusively establish that it did not misrepresent the benefits of the limited warranty?

Underwriters also moved for summary judgment on the Kellers' claims for fraud and misrepresentation. In its motion for summary judgment, Underwriters relied on excerpts from the Kellers' depositions to show that it made no

24

representations to the Kellers outside the statement that are in the policy. For instance, Deborah testified:

> Q. How about any oral or written representations from anybody saying that they are from [Underwriters], directed to you before you purchased the home, that are not included in the warranty?
>
> A. No.
>
> Q. No oral or written communications to you?
>
> A. No.
>
> Q. No misrepresentations to you about the warranty, what it covered, what it provided by somebody from [Underwriters]?
>
> A. Not outside of the warranty itself.

In his deposition, Roland testified that he did not communicate with Underwriters and that his wife handled all the communications they had with the company.

Based on this evidence, we conclude the burden of proof shifted to the Kellers to establish that an issue of material fact existed on the fraud and misrepresentations claims they filed against Underwriters. For example, the Kellers needed to produce evidence showing that Underwriters made a material misrepresentation to them that was false.[31] The summary-judgement evidence reflects that they failed to meet their burden.

---

[31] *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (providing that, to prevail on a fraud claim, the plaintiff must

For instance, the policy states that the warranties in it are limited. On foundation-damage claims, the warranty requires that enough problems exist with the home's foundation to make the home "unsafe, unsanitary, or otherwise unlivable." The language in the policy does not suggest the limited warranty covered all problems homeowners might experience with the foundations of their homes. The Kellers also claim that the limited warranty they received has little value. They claimed they were unaware, at closing, that the limited warranty cost Classic Homes only $151. According to the Kellers, had they known the cost of the limited warranty, they would not have purchased the home given their belief that the limited warranty covered any problems they might experience with the foundation of their home.

Here, it is undisputed that, before closing, the Kellers received a copy of the policy.[32] The application the Kellers signed in connection with the limited warranty

---

show, among other things, the defendant made a material representation that was false); *Woodlands Land Dev. Co., L.P. v. Jenkins*, 48 S.W.3d 415, 423 (Tex. App.—Beaumont 2001, no pet.) (providing that a claim for fraud in a real estate transaction requires proof that the defendant made "a false representation of a past or existing material fact in a real estate transaction to another person for the purpose of inducing the making of a contract"); *AKB Hendrick, LP v. Musgrave Enters., Inc.,* 380 S.W.3d 221, 238 (Tex. App.—Dallas 2012, no pet.) ("A cause of action for fraudulent misrepresentation requires proof of a false representation, and a negligent misrepresentation claim requires proof that the defendant has provided false information.").

[32] In her deposition, Deborah agreed she received a copy of the limited warranty before closing on the home.

they acquired is in the summary-judgment evidence. Under the law, the Kellers had a duty to read the policy and regardless of whether they did so, the law charged them with knowledge of the terms of their contract.[33] The policy's plain language makes it clear that the limited warranty did not cover all problems homeowners might have with their foundations.

The Kellers also contend the repair agreement they reached with Legend contains representations, made by Legend's attorney, relating to the opinion of Underwriters' expert about the condition of the foundation—that it had not failed. Underwriters, however, is not a party to the repair agreement and the summary-judgment evidence does not show otherwise. Instead, the summary-judgment record reflects that Underwriters was unaware of the settlement the Kellers made with Legend until 2014. And even had Underwriters told the Kellers about what its experts thought concerning their foundation, they failed to establish that they justifiably relied on Underwriters' expert given the adversarial nature of the parties' relationship.[34] We conclude the trial court was authorized to grant Underwriters' motion for summary judgment on the Kellers' fraud and misrepresentation claims.

---

[33] *See Ruiz v. Gov't Emps. Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.) ("An insured has a duty to read the policy and, failing to do so, is charged with knowledge of the policy terms and conditions.").

[34] *See Valls*, 314 S.W.3d at 635; *Ortiz*, 203 S.W.3d at 422.

II.     Did the trial court err by granting Legend's motion for JNOV on Classic Homes' claim for attorney's fees?

The Kellers argue the trial court erred by setting aside the jury's verdict on the amounts Classic Homes recovered in attorney's fees. According to the Kellers, Classic Homes failed to conclusively establish the amounts the trial court awarded in trial and appellate fees.

A. Standard of Review

Appellate courts review a trial court's decision on a motion for JNOV under a legal-sufficiency standard.[35] Under this standard, appellate courts must view the evidence admitted during the trial in the light most favorable to the jury's verdict, indulging every reasonable inference to support the jury's verdict.[36] In a legal-sufficiency review, appellate courts must credit evidence that supports the verdict if reasonable jurors could do so and disregard contrary evidence unless a reasonable juror could not.[37] Under Texas law, "[w]hen a party that bore the burden of proof at trial seeks a judgment notwithstanding the verdict, it must show that the record

[35] *Wilson*, 168 S.W.3d at 823.

[36] *Id.* at 822.

[37] *Id.* at 827.

establishes as a matter of law a proposition that contradicts the jury's finding."[38] Stated another way, "'[a] trial court may not properly disregard a jury's negative finding and substitute its own affirmative finding unless the evidence conclusively establishes the issue.'"[39]

Classic Homes sued the Kellers for attorney's fees relying upon the following provision found in the purchase agreement: "If either party employs an attorney incident to a Dispute that is resolved through arbitration, litigation or negotiation, the losing party agrees to reimburse the prevailing party for reasonable attorneys' fees, arbitration fees, court costs and other related expenses." Since Classic Homes prevailed on the Kellers' purchase-agreement claims, it was the "prevailing party" as to those claims so it had the right to sue the Kellers seeking to be reimbursed for the reasonable amount of attorney's fees it incurred in defending itself in the suit.[40]

---

[38] *Ginn v. NCI Bldg. Sys.*, 472 S.W.3d 802, 843 (Tex. App.— Houston [1st Dist.] 2015, no pet) (citing *Henry v. Masson*, 333 S.W.3d 825, 849 (Tex. App.— Houston [1st Dist.] 2010, no pet.)).

[39] *Id.* (quoting *Masson*, 333 S.W.3d at 849).

[40] *See Severs v. Mira Vista Homeowners Ass'n, Inc.,* 559 S.W.3d 684, 707 (Tex. App.—Fort Worth 2018) (explaining that the party who successfully defended a breach of contract claim could recover attorney's fees under that contract, even though it recovered no other damages); *Silver Lion, Inc. v. Dolphin St., Inc.*, No. 01-07-00370-CV, 2010 Tex. App. LEXIS 3873, at *53-54 (Tex. App.—Houston [1st Dist.] May 20, 2010, pet. denied) (mem. op.) (defendant awarded take-nothing

Ordinarily, determining the amount of a reasonable and necessary attorney's fee award presents questions of fact, so the trier of fact must resolve disputes over fees.[41] Generally, the testimony of an interested witness, even when uncontradicted, merely raises an issue of fact, leaving the amount of the fees that should be awarded up to the jury where the parties elect to have a jury decide the dispute.[42] In some circumstances, however, the testimony of an interested witness, when the testimony "is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon," the testimony "is taken as true, as a matter of law."[43]

Under Texas law, this is a narrow exception to the general rule that allows disputed claims to be resolved by juries. The exception applies if it is clear, direct, positive, free from contradiction or circumstances that make the testimony suspicious and "when the opposing party has the means and opportunity of

judgment on breach of contract claim was "prevailing party" entitled to recover attorney's fees under parties' agreement).

[41] *See Garcia v. Gomez,* 319 S.W.3d 638, 642 (Tex. 2010), *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990).

[42] *Smith v. Patrick W. Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009).

[43] *Ragsdale*, 801 S.W.2d at 882.

disproving the testimony or evidence and fails to do so."[44] Here, the Kellers presented no testimony to contradict Patrick Sullivan's testimony about what his firm charged Classic Homes. Thus, if Patrick's uncontradicted testimony was "unreasonable, incredible, or its belief is questionable," then his testimony raised only a fact issue leaving the amount Classic Homes was entitled to recover up to the jury.[45]

B. Analysis

The Kellers argue that the amounts the jury awarded Classic Homes for fees should be reinstated. They suggest that Patrick's testimony did not conclusively establish the amount that Classic Homes was entitled to recover in fees. In its brief, Classic Homes relies on the exception to the general rule, as it argues Patrick "provided uncontroverted testimony supporting the reasonableness and necessity of attorney's fees and costs for [Classic Homes] amounting to $122,663[ ] at trial and fees of $36,000 on appeal." According to Classic Homes, given the Kellers' failure to call witnesses to dispute Patrick's testimony about his firm's fees,[46] the jury had

---

[44] *Id.*

[45] *Id.*

[46] The Kellers called Deborah Keller to testify in the trial over fees but her testimony does not address what constitutes a reasonable fee.

31

no discretion but to award the amounts Patrick testified to as reasonable. The trial court apparently agreed with Classic Homes and granted its motion for JNOV substituting its judgment for the jury's.

For two reasons, we conclude that Patrick's testimony failed to conclusively establish the amounts Classic Homes had a right to recover for attorney's fees. First, Legend Home Corporation was not a party to the purchase agreement that authorized Classic Homes to recover fees. Yet, Patrick and his firm billed Classic Homes and Legend Home Corporation collectively without separating the fees the firm charged between the two entities. To address that problem, Patrick allocated ten percent of the firm's legal fees to Legend Home Corporation. But his allocation was merely an estimate[47] segregating his firm's fees, so the jury was free to reject the division he suggested was reasonable. Second, Patrick testified before the jury that he and Classic Homes' general counsel, Lauren Sullivan, were dating and got married after the Kellers sued. The evidence admitted during the trial revealed that Lauren approved the invoices that Patrick's firm sent to Legend. The relationship that existed between the lead attorney, who was the principal biller on the case, and Classic Homes is a circumstance the jury could have viewed as casting doubt on the

---

[47] We note that when Patrick testified, he never explained why he allocated only ten percent of the firm's fees to Legend Home Corporation.

reliability of Patrick's testimony. We find that the evidence admitted in the trial revealed material issues of fact on the question of whether the fees Classic Homes incurred were reasonable.

For that reason, the jury was free to decide the dispute over the recoverable fees[48] and the court erred by setting aside the jury's award.[49] We note that Classic Homes did not argue the amounts the jury awarded were against the greater weight and preponderance of the evidence.[50] Because the general rule that an interested

---

[48] *E.g., In re Bent*, 487 S.W.3d 170, 184 (Tex. 2016) ("[A] jury does not necessarily err in awarding no attorney's fees if the party seeking them fails to establish its requested fees are 'reasonable and necessary.'"); *In re United Servs. Auto. Ass'n*, 446 S.W.3d 162, 178-80 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (upholding the jury's verdict awarding the plaintiffs zero appellate attorney's fees because the plaintiffs failed to establish the reasonable and necessary amount of their attorney's fees for the appellate levels); *Rosenblatt v. Freedom Life Ins. Co. of Am.*, 240 S.W.3d 315, 320 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (upholding jury verdict awarding zero attorney's fees because plaintiff did not conclusively prove his entitlement to attorney's fees as a matter of law); *Cain v. Pruett*, 938 S.W.2d 152, 160 (Tex. App.—Dallas 1996, no writ) (reversing the trial court's judgment notwithstanding verdict and entering judgment on jury's verdict where jury awarded trial attorney's fees but no appellate fees).

[49] *See Smith,* 296 S.W.3d at 547-48.

[50] *See* Tex. R. App. P. 38.2(b) ("When the trial court renders judgment notwithstanding the verdict on one or more questions, the appellee must bring forward by cross-point any issue or point that would have vitiated the verdict or that would have prevented an affirmance of the judgment if the trial court had rendered judgment on the verdict. Failure to bring forward by cross-point an issue or point that would vitiate the verdict or prevent an affirmance of the judgment waives the complaint."); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) ("When

witness's testimony is not conclusive applies here, we reinstate the amounts the jury awarded Classic Homes in attorney's fees.

Conclusion

We overrule the first five issues the Kellers raise in their appeal. We sustain the Kellers' sixth issue challenging the trial court's ruling granting Classic Homes' motion for JNOV.[51] For these reasons, we affirm the take-nothing judgment awarded to the defendants on the Kellers' claims. We reverse the trial court's ruling on Classic Homes' motion for JNOV, we set aside the amounts the trial court awarded to Classic Homes on its counterclaim, and we render judgment in favor of Classic Homes on its counterclaim by awarding it $60,000 for its fees through trial and nothing for any appeals.

AFFIRMED IN PART, REVERSED AND RENDERED IN PART.

_____
HOLLIS HORTON
Justice

Submitted on December 19, 2018
Opinion Delivered May 30, 2019
Do Not Publish
Before Kreger, Horton and Johnson, JJ.

a party attacks the factual sufficiency of an adverse finding on an issue on which [it] has the burden of proof, [it] must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence.").

[51] *See* Tex. R. App. P. 43.2(c).

34